No. 87–7101.   MANN *v.* OKLAHOMA.   Ct. Crim. App. Okla.
Certiorari denied.

JUSTICE MARSHALL, with whom JUSTICE BRENNAN joins,
dissenting.

Adhering to my view that the death penalty is in all circum-
stances cruel and unusual punishment prohibited by the Eighth
and Fourteenth Amendments, *Gregg* v. *Georgia,* 428 U. S. 153,
231 (1976) (MARSHALL, J., dissenting), I would grant the petition
for certiorari and vacate the death sentence in this case.   Even if
I did not take this view, I would grant the petition in order to
resolve the question whether inflammatory and prejudicial photo-
graphs of the victim's body introduced during the guilt phase of
a capital trial, and subsequently reincorporated during the sen-
tencing phase, violate the accused's constitutional right to a reli-
able sentencing determination.   The Court granted certiorari on a
very similar question last Term in *Thompson* v. *Oklahoma,* 487
U. S. 815 (1988), but did not decide it because the Court found
that the petitioner in that case, who was 15 years old at the time
of the offense, could not be subjected to the death penalty under
the Eighth and Fourteenth Amendments.   See *id.,* at 838, n. 48
(plurality opinion).

The petitioner here, an adult, was convicted of first-degree mur-
der and sentenced to death for his role in the same murder which
gave rise to *Thompson, supra.*   During the guilt phase of the pe-
titioner's trial, the prosecution introduced two color photographs
of the victim's body that were taken after the body had been re ·
trieved from a river one month after the murder.   These photo-
graphs were reincorporated by the prosecution during the sen-
tencing phase of the trial.   On direct appeal, the Oklahoma Court
of Criminal Appeals found that the trial court erred in admitting
the photographs due to their "gruesome" and "inordinately grisley
*[sic]*" nature.   749 P. 2d 1151, 1156 (1988).   The court concluded,
however, that the error was harmless because "the case against ap-
pellant was sufficient" without the photographs and thus the court
could "not find this evidence affected the jury's verdict."   *Ibid.*

Significantly, the court never considered whether the introduc-
tion of the photographic evidence violated the petitioner's "con-
stitutional rights by virtue of its being considered at the penalty
phase" of his trial.   *Thompson, supra,* at 838, n. 48.   The state
court's analysis is therefore fatally flawed in that it did not accord

any weight whatsoever to "the qualitative difference of death from all other punishments." *California* v. *Ramos*, 463 U. S. 992, 998 (1983). As to the specific claim, moreover, the petitioner argues convincingly that the photographic evidence created an impermissible risk that his death sentence was based on considerations that are "totally irrelevant to the sentencing process," *Zant* v. *Stephens*, 462 U. S. 862, 885 (1983), because it focused the jury's attention on the postmortem decomposition of the victim's body rather than on "the character of the [defendant] and the circumstances of the crime." *Id.*, at 879. Indeed, photographic evidence of this sort seems no less inflammatory or prejudicial than the victim impact statements deemed inadmissible in *Booth* v. *Maryland*, 482 U. S. 496 (1987).

The introduction in capital trials of ghastly photographs of the victim presents substantial and recurring issues of constitutional dimension, see, *e. g.*, *Tucker* v. *Kemp*, 480 U. S. 911 (1987) (BRENNAN, J., dissenting from denial of certiorari), that warrant plenary review by the Court. I dissent.