Loyd Winford LAFEVERS, Appellant,

v.

STATE of Oklahoma, Appellee.

No. F–86–265.

Court of Criminal Appeals of Oklahoma.

Sept. 10, 1991.

As Corrected Oct. 16, 1991.

Elaine Meek, Cindy Foley, Asst. Public Defenders, Oklahoma City, for appellant.

Robert H. Henry, Atty. Gen., Terry J. Jenks, A. Diane Hammons, Asst. Attys. Gen., Oklahoma City, for appellee.

## OPINION

LANE, Presiding Judge:

Loyd Winford Lafevers was convicted of First Degree Murder, Burglary in the First

Degree, Robbery in the First Degree, Kidnapping, Larceny of a Motor Vehicle, Arson in the Third Degree, Rape in the First Degree and Anal Sodomy. He was tried jointly with a co-defendant, Randall Eugene Cannon, before a jury in Oklahoma County District Court, Case No. CRF–85–3254. Both Appellant and his co-defendant were found guilty on all counts and sentenced to death for the First Degree Murder charge. Both men were also sentenced to terms of 20 years, 100 years, 100 years, 20 years, 15 years, 250 years and 20 years respectively on the other counts. Appellant has filed this appeal seeking reversal of his conviction. We find that we must grant the requested relief insofar as the murder, rape, sodomy and arson convictions are concerned. All other counts, however, are affirmed.

On June 24, 1985, Appellant and co-defendant Cannon decided to steal a car after Appellant's car broke down in a northwest Oklahoma City neighborhood. After selecting a house in the neighborhood, the two men forced their way into the home of eighty-four year old Addie Hawley. They ransacked her home, taking eight dollars from her purse, along with the keys to her car and the garage door opener. The two took her out of the house and into the car. Cannon, who was driving the car, drove for just over a mile before pulling over so that they could put Hawley in the trunk.

The two men drove to a convenience store where they bought a two liter bottle of orange soda. After drinking some of the soda, they poured the rest out and filled the bottle with gasoline. Appellant directed Cannon to drive to a secluded area where he removed Hawley from the trunk of the car. Although there was evidence presented at trial that indicated that Hawley was raped, neither defendant admitted having committed rape or sodomy. Each man indicated in his pretrial confession to police[1] and during his testimony at trial

that the other man had committed the sexual offenses while he remained as a lookout.

After the completion of the sex acts, one of the two men, again each blamed the other, poured gasoline from the orange soda bottle on Hawley and set her on fire. They drove the car a short distance away and also set it on fire.

Rescue personnel were called to the scene soon after the fires were set. Although Hawley had been burned over sixty percent of her body, she was still alive. She had suffered a blunt injury to the forehead and had two black eyes along with multiple cuts and bruises. She died a short time after being taken to the hospital.

■ At the outset, we will deal with Appellant's claim that the trial court unconstitutionally denied his numerous motions requesting a separate trial from that of his co-defendant Cannon. We agree with the contention and find that the murder conviction and its resulting sentence of death, as well as the convictions for rape, sodomy and arson, must be reversed.

Although each of the two defendants in this case repeatedly requested a separate trial, those requests were summarily denied. While we acknowledge that joint trials are often preferred in so far as they are more economical in both judicial and monetary terms, *Funkhouser v. State*, 734 P.2d 815 (Okl.Cr.1987), *cert. denied*, 484 U.S. 942, 108 S.Ct. 326, 98 L.Ed.2d 354 (1987), the frugal aspects of a single trial for multiple defendants must give way to the more important constitutional right of each defendant to receive a fair trial. Several errors of constitutional proportion occurred in the instant case because of the joint trial, any one of which would require reversal, which would have easily been avoided had the separate trials been granted. We will first address the errors which occurred in the guilt/innocence stage of the trial.

We find that the trial of Cannon and Lafevers together clearly violated the rules

---

1. Each man also spoke to David Hawkins, another inmate in the Oklahoma County jail, at different times. The effect of this testimony will be discussed later.

against joint trials in cases where the defendants are presenting mutually antagonistic defenses. In the instant case, each defendant admitted his presence during the occurrence of the crimes in question. Neither man, however, admitted raping or sodomizing the victim. In fact, each man placed blame with the other for those acts. Additionally, both men blamed the other for setting the victim on fire after the rape and sodomy were completed. In confessions that were ultimately admitted at trial, each man claimed that the other man had been the perpetrator of the most heinous of the crimes charged. Our review must focus upon whether these confessions should have indicated to the trial court that the defenses of the two men were mutually antagonistic, dictating that separate trials were appropriate.

In *Murray v. State*, 528 P.2d 739, 740 (Okl.Cr.1974), we explained the need for separate trials when the defenses of the co-defendants were mutually antagonistic:

> Denial of a severance in the instant case resulted in pitting defendant against co-defendant. To try both together was, in effect, to try each on the confession of the other.

We quoted an Illinois case as lending support for our position:

> The trial was in many respects more of a contest between the defendants than between the people and the defendants. It produced a spectacle where people frequently stood by and witnessed a combat in which the defendants attempted to destroy each other. Any set of circumstances which is sufficient to deprive a defendant of a fair trial if tried jointly with another is sufficient to require a separate trial.

*Id.* quoting *People v. Braune*, 363 Ill. 551, 2 N.E.2d 839 (1936).

Our review of this issue is further guided by our opinion in *Master v. State*, 702 P.2d 375 (Okl.Cr.1985). In *Master*, we recognized:

> [W]here the respective defenses of two defendants are mutually antagonistic in

that the testimony and confession of each exculpated himself and inculpated the other, the effect of trying both together would be to try each on the confession of the other and serves to deny those defendants a fair trial. Therefore, the issue before us is not whether there are disagreements between defendants concerning the facts, nor whether one or the other should bear a greater responsibility for the crime, but whether the defenses are antagonistic in that each defendant is attempting to exculpate himself and inculpate his co-defendant.

*Id.* at 378.

Our resolution of the *Master* case affirming the trial court's decision to deny severance turns on a very important difference to the present case; Master and his co-defendant Cooks were charged with Felony-murder which does not require proof of either malice aforethought or, in fact, of any actual intent to cause the death of the victim. In the present case, Felony–Murder was not charged. Accordingly, intent to cause the death of the victim was an important predicate to a finding of guilty for each defendant. Likewise, the allegations of rape, anal sodomy, and arson have intent requirements independent from that of the murder charge. Consequently, we must be circumspect in our review of the facts of this case to determine whether the proof of or defense to these elements as to each defendant at trial violated the defendants' right to a fair trial.

■ We have been very strict with our construction of "mutually antagonistic" and its application to the facts of each individual case. *See James v. State*, 736 P.2d 541, 543 (Okl.Cr.1987) *cert. denied*, 484 U.S. 970, 108 S.Ct. 467, 98 L.Ed.2d 406 (1987); *VanWoundenberg v. State*, 720 P.2d 328 (Okl.Cr.1986), *cert. denied*, 479 U.S. 956, 107 S.Ct. 447, 93 L.Ed.2d 395 (1986); *Master v. State*, 702 P.2d at 375; *Cooks v. State*, 699 P.2d 653 (Okl.Cr.1985), *cert. denied*, 474 U.S. 935, 106 S.Ct. 268, 88 L.Ed.2d 275 (1985). It is not enough that the defenses of the co-defendants are in-

consistent, in conflict or are otherwise unreconcilable. To be considered "mutually antagonistic," the two theories of defense must be in direct contravention and the parties must each place blame with the codefendant. The rule of law which we must apply in our review was very simply stated in *Van Woundenberg*, 720 P.2d at 331:

> Defenses are antagonistic where each defendant is trying to exculpate himself and inculpate his codefendant.

There can be no question in the present case that the two defendants presented mutually antagonistic defenses. The nature of the conflict was made instantly clear when the two gave pretrial statements to the police concerning their individual participation in the crimes. These statements were similar in most respects with one glaring exception; while both men admitted their presence at the time of the crimes, each claimed that other committed the rape, murder and burning of the victim. The clear message of each man's confession was to place blame on the other in an attempt to lessen his own participation and responsibility for the crimes. Had the charges against the defendants been different, i.e. felony-murder, our analysis may reach a different result, but given the intent requirements of the crimes charged against these two men, we have no other option.

■ Individual intent must be proven *by the State* as to each defendant. Intent to commit a crime is different from culpability for the results of the criminal actions. The degree of culpability is not an issue in the first stage of a two stage proceeding on the charges brought in this case. Without a finding that the requisite intent factor had been satisfied, mere culpability alone is not enough to sustain a conviction.

■ Having concluded that the defenses of the two were mutually antagonistic, we must address the impact of a joint trial in such a situation on the constitutional rights of the accused. We will first consider the ramifications of admission of both defendant's pretrial statements. Prior to their introduction, the statements were redacted to preclude any specific mention of the other defendant. The jury was instructed not to consider the statement of one defendant as evidence against the other. Although these procedures were properly carried out, because of the nature of the confessions, they were clearly "interlocking." That is to say, consideration of the two statements together show them both to be concerned with the same event, implicating the other defendant while not by name, but certainly by circumstance. *See Cruz v. New York*, 481 U.S. 186, 107 S.Ct. 1714, 95 L.Ed.2d 162 (1987). We are not concerned here with a violation of the Confrontation Clause [2] as is generally the case in such situations, because both defendants testified at trial; however, the admission of the statements is no less troublesome.

In *Murray*, 528 P.2d at 740, we reversed the conviction of the defendant holding:

> Generally this Court, in the past, has held that any error created by reason of admitted confessions of a co-defendant which implicates the defendant is cured when the co-defendant takes the stand and is subject to cross-examination. In the instant case, it is our opinion that both defendants had no alternative except to take the stand and defend himself against the other's confession blaming the killing on each other.

We find the same situation to be true in the present case. Both Lafevers and Cannon assert in their respective briefs that neither would have testified but for the need to explain the confession of the other. Reversible error resulted when the court refused to grant the requested severance.

■ Additionally, we find that the first stage proceeding was fatally flawed when the dictates of 22 O.S.1981, § 655 were

---

**2.** Because both defendants took the stand, the errors discussed in *Cruz v. New York*, 481 U.S. 186, 107 S.Ct. 1714, 95 L.Ed.2d 162 (1987) and *Richardson v. Marsh*, 481 U.S. 200, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987) are not applicable here.

violated. That statutory section absolutely requires that a defendant be permitted to exercise the full complement of nine preemptory challenges notwithstanding that he is tried conjointly with a co-defendant if the defenses of the parties on trial are inconsistent. In this case, the trial court required the co-defendants to share nine peremptory challenges. Appellant was allowed to exercise four challenges, while defendant Cannon was able to exercise five. Appellant objected at trial to the procedure followed at trial and appropriately informed the court that there were jurors which they would remove if allowed the additional challenges. *See Ross v. Oklahoma,* 487 U.S. 81, 108 S.Ct. 2273, 101 L.Ed.2d 80 (1988) *reh. denied* 487 U.S. 1250, 109 S.Ct. 11, 101 L.Ed.2d 962 (1988). The request for additional peremptory challenges should have been granted. *Murray,* 528 P.2d at 740.

■ We also find that significant error occurred in the second stage proceedings which would independently require reversal of Appellant's death sentence notwithstanding the errors of the first stage. In *Zant v. Stephens,* 462 U.S. 862, 885, 103 S.Ct. 2733, 2747, 77 L.Ed.2d 235 (1983), the Supreme Court reaffirmed the important role of the second stage in a capital case. It quoted from its previous opinion in *Gardner v. Florida,* 430 U.S. 349, 358, 97 S.Ct. 1197, 1204, 51 L.Ed.2d 393 (1977):

> It is of vital importance to the defendant and to the community that any decision to impose the death penalty be, and appear to be, based on reason rather than caprice or emotion.

In *Woodson v. North Carolina,* 428 U.S. 280, 304, 96 S.Ct. 2978, 2991, 49 L.Ed.2d 944 (1976), the Court recognized that "the fundamental respect for humanity underlying the Eighth Amendment ... requires consideration of the character and record of the individual offender and the circumstances of the particular offense as a constitutionally indispensable part of the process of inflicting the death penalty." During the second stage of a capital trial, it is incumbent upon the defendant to present evidence showing himself in the best light possible, while the State is endeavoring to prove that the defendant in question is so incorrigible that the jury should impose the death penalty.

Unlike the first stage of a bifurcated trial, in the second stage culpability of the defendant is a critical issue. In this case, neither defendant denied that the victim had been viciously treated. Instead, their attempt to avoid the death penalty focused on attempting to lessen their own participation in the events of that evening. The defense presented by defendant Cannon in mitigation to his own responsibilities for the events resulted in evidence that was directly aggravating to Appellant Lafevers. Again, the inherent problems involved when two co-defendants with mutually antagonistic defenses are put on trial together result in fundamental unfairness. The granting of separate trials would have avoided this problem.

■ Finally, we find that evidence of the co-defendant's confession to another crime[3] violated Appellant's rights under Article 2, § 20 of the Oklahoma Constitution and under the Confrontation Clause to the United State's Constitution when the confession was offered in the second stage of the trial despite the fact that Cannon chose not to take the witness stand. The State urges us to find this error at most harmless and characterizes the problem as one involving only the improper admission of hearsay evidence. The State further alleges that any denial of confrontation rights was cured by Cannon's testimony in the first stage of the proceedings. The

---

3. The State presented evidence that the two defendants had broken into a second house, occupied by Tammy Jean Padon and her grandmother, after the commission of the crimes involving Addie Hawley. Defendant Cannon confessed to police that he had been involved in the incident; however, his confession largely implicated Appellant as the perpetrator of the attack on the Padons.

State's analysis of the problem is untenable in light of numerous Supreme Court cases cited by Appellant and ignored by the State.

In *Cruz v. New York*, 481 U.S. at 190–91, 107 S.Ct. at 1717–18, the Supreme Court held:

> Where two or more defendants are tried jointly, therefore, the pretrial confession of one of them that implicates the others is not admissible against the others unless the confessing defendant waives his Fifth Amendment rights so as to permit cross-examination.

This simple statement of law overruled all prior pronouncements that such evidence when accompanied with an instruction limiting consideration of the evidence to the confessing defendant was properly admissible. In *Cruz*, the Court held that such limiting instructions were very likely to be ignored by the jury which would then use the evidence improperly against the non-confessing defendant. The error in this case falls squarely into the prohibition created in *Cruz*.

In this case, although Cannon testified in the first stage of the trial, the evidence concerning the Padon incident was properly withheld until the second stage of the trial under *Burk v. State*, 594 P.2d 771 (Okl.Cr. 1979), overruled on other grounds, 772 P.2d 922 (1989). Consequently, any attempt to cross-examine Cannon concerning the events at the Padon home would have been improper. Accordingly, contrary to the State's position, Appellant was not afforded the opportunity to cross-examine on this subject.

Although *Cruz* held that the confession of the non-testifying co-defendant may be admissible as to the other defendant[s] if when measured against that defendant's confession it is supported by "sufficient 'indicia of reliability' to be directly admissible against him (assuming the 'unavailability' of the co-defendant) despite the lack of opportunity for cross-examination ...," we do not have that situation here. Appellant did not confess to these crimes and, addi-

tionally, the victims involved could not positively identify him as the perpetrator of the crimes. There is no other direct evidence linking Appellant with the crimes committed against the Padons. We cannot find that Cannon's confession was "sufficiently" reliable to be admitted without the accompanying right to cross-examine.

Because of the strength of Cannon's confession, we are unable to find that its admission was harmless error. In its verdict, the jury found that Appellant constituted a continuing threat to society. The evidence contained in Cannon's confession, exclusive of the events involving Addie Hawley's death, was the most damning evidence offered against Appellant. We cannot say with certainty that it had no effect on the jury's verdict, thus we cannot find the error to have been harmless. *Fontenot v. State*, 742 P.2d 31, 32 (Okl.Cr.1987).

Because we find that the trial court abused its discretion in refusing to grant the requested separate trials, we are forced to reverse Appellant's convictions for Murder, Third Degree Arson, First Degree Rape and Forcible Anal Sodomy and remand the case back to the district court for a new trial on these counts.

■ We will now consider only the remaining allegations of error which relate to the convictions for burglary and kidnapping. First, we consider Appellant's claim that an instruction should have been given which would have informed the jury that Cannon was an accomplice and that his testimony must therefore be corroborated. While it is true that such an instruction would have been warranted, we find the lack of this instruction to be at most, harmless error. *Maxwell v. State*, 742 P.2d 1165 (Okl.Cr.1987); *Smith v. State*, 727 P.2d 1366 (Okl.Cr.1986), *cert. denied*, 483 U.S. 1033, 107 S.Ct. 3277, 97 L.Ed.2d 780; *VanWoundenberg v. State*, 720 P.2d at 334; *Wade v. State*, 624 P.2d 86 (Okl.Cr. 1981). Not only was there corroborating evidence from independent witnesses, Ap-

pellant's own confession admits his complete complicity in the two crimes. We do not find that the lack of this instruction prejudiced Appellant requiring reversal.

Appellant's next argument concerns the sufficiency of the evidence which supports his conviction for First Degree Burglary. Appellant claims that the evidence establishes that Hawley was in the backyard when she was seized by the two men, thus the statutory requirement that someone be in the house at the time it is illegally entered cannot be met. 21 O.S.1981, § 1431. This position is not supported by the evidence. It is clear from the testimony at trial that Hawley was in the house when Appellant and Cannon forcefully entered the house. Testimony established that the two men went to the door, knocked, and when Hawley answered, asked to use the phone. When she refused, they kicked the door in. Hawley ran into the backyard in a vain attempt to escape.

> The test to be utilized by a reviewing court when determining if the State presented sufficient evidence to support a conviction where both direct and circumstantial evidence has been introduced is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime charged beyond a reasonable doubt. *Spuehler v. State*, 709 P.2d 202 (Okl.Cr.1985); *Riley v. State*, 760 P.2d 198 (Okl.Cr.1988).

*Drew v. State*, 771 P.2d 224, 227 (Okl.Cr. 1989). That test is met here.

The sixth proposition of Appellant's brief concerns a number of instances during the trial where Appellant claims that unfair evidence of other crimes was introduced against him. Individual consideration of each of the six alleged instances of error shows that no error occurred which would require relief from this Court.

First, Appellant points out testimony by David Hawkins that Appellant had admitted going previously to Hawley's home to extort money from her. (Tr. 604). This same testimony was given by Sam Cannon, co-defendant Cannon's brother. (Tr. 724). We find that although this evidence would have clearly been admissible under 12 O.S.1981, § 2404 as proof of "motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident," Appellant's objection to the testimony was sustained in each instance and the jury was admonished not to consider the evidence. This testimony did not constitute error. *Patterson v. State*, 735 P.2d 338 (Okl.Cr.1987); *Funkhouser v. State*, 734 P.2d at 817; *Kitchens v. State*, 513 P.2d 1300 (Okl.Cr.1973).

The second and third alleged incidents of "other crimes" testimony were also elicited from David Hawkins. First, Appellant claims Hawkin's statement that Cannon had never been out with Lafevers before implied that Appellant frequently went out to commit crimes. (Tr. 614). We do see that this comment by the witness could be taken by the jury as an indication that Appellant was guilty of committing offenses other than those for which he was presently on trial. We will not find error where the inference is obvious only to counsel. *See Roubideaux v. State*, 707 P.2d 35, 38 (Okl.Cr.1985).

■ The next statement identified concerned Appellant's use of illegal drugs, specifically speed. (Tr. 617). The State's intent to use this evidence was correctly disclosed to Appellant prior to trial as required by *Burk v. State*, 594 P.2d at 774. (O.R. 200). The evidence was then admissible under 12 O.S.1981, § 2404. There is no error identified here.

■ Likewise, testimony of Carolyn Cannon to the effect that Appellant had committed several burglaries in the weeks preceding the murder of Hawley was not error. This evidence was also included in the notice filed by the State. In any event, Appellant's objection to the evidence was sustained, thus removing the evidence form the jury's consideration.

The final allegation of improper evidence concerns an incident immediately prior to the crimes in question here. While driving around before going to Hawley's house, Appellant got mad at the driver of another car and intentionally rear-ended the other vehicle. Unfortunately for Appellant, the only damage done was to his own car. This was the event which incapacitated his car, inspiring him to acquire another through theft. We find that the evidence of the car-ramming was sufficiently connected to the crimes involved in the instant case that it is part of the same occurrence. *Marks v. State*, 654 P.2d 652, 655 (Okl.Cr. 1982). *See also Hayes v. State*, 738 P.2d 533 (Okl.Cr.1987), vacated 486 U.S. 1050, 108 S.Ct. 2815, 100 L.Ed.2d 916 (1988). The car incident was relevant evidence to prove Appellant's motive for stealing another car. *Bruner v. State*, 612 P.2d 1375, 1377 (Okl.Cr.1980).

The next proposition of error concerns Appellant's dissatisfaction with the jury panel which he claims was not a representative cross-section of the community because jurors over the age of seventy were automatically excused from service. We first rejected this argument in *Rojem v. State*, 753 P.2d 359, 365 (Okl.Cr.1988), *cert. denied*, 488 U.S. 900, 109 S.Ct. 249, 102 L.Ed.2d 238 (1988), and affirmed our position in *Fox v. State*, 779 P.2d 562, 567 (Okl.Cr.1989). Appellant cites nothing which causes us to reconsider our position on this issue.

In pretrial motions, Appellant requested that the trial court appoint a psychiatrist to testify as to the effects of PCP on his mental state at the time of the crime. We agree with the State that Appellant did not even attempt to make the threshold showing that sanity was to be an issue at trial necessary to trigger the appointment of an expert under *Ake v. Oklahoma*, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985). In *Ake*, the United States Supreme Court held that when an indigent criminal defendant demonstrates

to the trial judge that his sanity at the time of the offense is to be a significant factor at trial, the Fourteenth Amendment's guarantee of fundamental fairness requires that the State provide access to an independent psychiatric expert to assist in the evaluation and preparation of the defense. We have consistently limited the extension of the *Ake* rule to cases involving the sanity of the defendant at the time of the commission of the crimes. *Stafford v. Love*, 726 P.2d 894, 896 (Okl.Cr.1986); *Standridge v. State*, 701 P.2d 761, 764 (Okl.Cr.1985). The trial court's denial of Appellant's request was not error insofar as Appellant never alleged that his sanity was in question. He simply sought to prove the possible influence of the drug PCP on his behavior. He failed to meet his burden of showing the necessity of the expert, thus, no error was committed by the court's denial of funds to pay the expert.

Our final inquiry is into the conduct of the prosecutor in his final argument. At the outset, we note that of the twelve comments identified on appeal as improper, only three were met with contemporaneous objections at trial. Appellant has waived his ability to argue that the comments which drew no objection at trial constitute error. *Fowler v. State*, 779 P.2d 580, 589 (Okl.Cr.1989); *VanWoundenberg v. State*, 720 P.2d at 334.

In any event, we do not find that any of the comments would have resulted in reversible error. The majority of the comments were logical inferences from the evidence, that Appellant changed his appearance, that he was a hardened criminal, and that Appellant expressed no remorse over the crime. Additionally, the statement that Appellant intended to kill Tammy Padon was a reasonable inference based on the evidence. These comments were not improper. *Cobbs v. State*, 629 P.2d 368 (Okl. Cr.1981).

We further find that the prosecutor's comments concerning the jury's duty to do justice by returning a verdict of guilty was not outside the scope of permis-

sible closing argument. *Vaughn v. State,* 697 P.2d 963, 96 (Okl.Cr.1985); *Mahorney v. State,* 664 P.2d 1042, 1047 (Okl.Cr.1983). As a part of the oath of office, jurors pledge to uphold justice. The prosecutor's comments were merely indicative what he believed the evidence required in that case. The comments were not so misleading that the jury could believe that they had no choice but to return a verdict of guilt.

We have reviewed all of the comments identified by Appellant as improper. We have thoroughly reviewed the record for fundamental error in the case of the comments which were not objected to at trial. We have not identified any error which requires relief from this Court. *See Mann v. State,* 749 P.2d 1151, 1159 (Okl.Cr.1988), *cert. denied,* 488 U.S. 877, 109 S.Ct. 193, 102 L.Ed.2d 163 (1988); *Castro v. State,* 745 P.2d 394, 403, 406 (Okl.Cr.1987), *cert. denied,* 485 U.S. 971, 108 S.Ct. 1248, 99 L.Ed.2d 446 (1988); *Stouffer v. State,* 738 P.2d 1349, 1357 (Okl.Cr.1987), *cert. denied,* 484 U.S. 1036, 108 S.Ct. 763, 98 L.Ed.2d 779 (1987).

BRETT, PARKS and JOHNSON, JJ., concur.

LUMPKIN, V.P.J., concurs in part/dissents in part.

LUMPKIN, Vice Presiding Judge, concurs in part/dissents in part:

I concur in the Court's decision that the convictions for Burglary in the First Degree, Kidnapping and Larceny of a Motor Vehicle should be affirmed. However, I must dissent to the Court's analysis of mutually antagonistic defenses based on the facts of this case.

The Court correctly states the law set forth in *VanWoundenberg v. State,* 720 P.2d 328 (Okl.Cr.1986) and *Master v. State,* 702 P.2d 375 (Okl.Cr.1985) that "defenses are antagonistic where each defendant is trying to exculpate himself and inculpate his codefendant". However, in this case neither defendant is claiming innocence but

level of culpability for the offenses they admit they participated in committing. The Court disregards the law relating to principals in the commission of a criminal offense and determines the statements relating to level of culpability constitute mutually antagonistic defenses. The real issue is whether the rule in *Enmund v. Florida,* 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982), that an individual cannot receive a sentence of death for murder by an accomplice unless the individual knew the killing would take place, knew lethal force would be used, killed, or attempted the killing, is applicable to either or both of the defendants in this case based on the evidence presented. While I recognize that *Enmund* addressed a felony murder fact situation, the principles set forth by the Court must still be considered. While the evidence may be contradictory we must review the decision of the jury from the perspective of whether there is any evidence in the record to support that verdict. In this case the facts show that both defendants participated as principals in each of the offenses with each only denying that they committed the coup de grace for the crimes of rape, murder and burning of the victim. These are not antagonistic defenses but go only to the degree of fault which might be relevant for mitigation of punishment or review of the death penalty. In addition, since the "defenses" in reality went only to mitigate the level of culpability for punishment and did not exculpate the guilt of either, the positions did not constitute inconsistent defenses which would warrant the granting of additional preemptory challenges pursuant to 22 O.S.1981, § 655.

The Court bases its analysis on speculation that the State did not prove individual intent by each defendant as to each of the convictions it reverses. However, intent most often is proved by circumstantial evidence and the jury must determine its sufficiency based on the weight and credit they give to it. As an appellate court we review only to determine if evidence was presented which supports the verdict of the

jury. In this case circumstantial evidence was presented from which the jury could determine that intent was proved. Therefore, all their verdicts should be affirmed.

I agree with the Court that error occurred in the sentencing stage which would require the First Degree Murder conviction to be remanded for resentencing pursuant to 21 O.S.Supp.1989, § 701.10a. The admission of co-defendant Cannon's confession violated Appellant's rights under Article 2, § 20 of the Oklahoma Constitution and the Sixth Amendment to the United States Constitution. The error in this case was not harmless therefore a resentencing trial is required.