Delpha Jo SPUNAUGLE Appellant,

v.

The STATE of Oklahoma Appellee.

No. F–95–308.

Court of Criminal Appeals of Oklahoma.

Sept. 3, 1997.

 

Chris Box, Oklahoma City, for Defendant at trial.

Robert H. Macy, District Attorney and Fern Smith, Assistant District Attorney,

Oklahoma County District Attorney's Office, Oklahoma City, for the State at trial.

James D. Pybas, Appellate Defense Counsel, Capital Direct Appeals Division, Okla. Indigent Defense System, Norman, for Appellant on appeal.

W.A. Drew Edmondson, Attorney General and Sandra D. Howard, Assistant Attorney General, Oklahoma City, for Appellee on appeal.

## OPINION

LANE, Judge.

Delpha Jo Spunaugle was tried by jury and found guilty of Murder in the First Degree, Conspiracy to Commit First Degree Murder, and Solicitation to Commit First Degree Murder (21 O.S.1991, §§ 701.7, 421, 701.16) in Oklahoma County District Court Case No. CRF–93–5206. The jury recommended a sentence of death for the murder, life imprisonment for the solicitation, and ten years imprisonment for the conspiracy to commit murder. The trial judge imposed the recommended sentences. We reverse judgment and sentence, and remand for a new trial.

## FACTS

Delpha Jo Spunaugle tried for at least two years to find someone to kill her husband, Dennis. On the evening of August 14, 1993 she asked her friend David Woodward to come over and be with her when Dennis came home from a night of drinking. Spunaugle believed Dennis would not abuse her verbally if Woodward were present, and had invited him over on other occasions for this reason. Dennis Spunaugle came home and after some verbal exchange with his wife, went to bed. Some time later Woodward climbed into the Spunaugle's motor home which was parked on the driveway and went to sleep. Delpha Jo Spunaugle awakened him in the early morning hours of August 15th, announcing, "It's time."

She led Woodward into the bedroom. Dennis was sleeping with his head at the foot of the bed. Woodward hit him with a baseball bat[1], partially severing his ear and knocking him off the bed. A struggle ensued and Woodward stabbed Dennis repeatedly. When Dennis appeared to get the upper hand, Delpha Jo hit him with the bat. As dawn neared and Dennis still was not dead, Delpha Jo got a rope and Woodward coiled it around Dennis' neck. Woodward and Delpha Jo each pulled one end of the rope until Dennis died.

Five days later the maggot infested and partially skeletonized body of Dennis Spunaugle was found by a passing truck driver in a dry creek bed near the intersection of 164th Street and County Line Road in Oklahoma County where Delpha Jo and Woodward had left it. Woodward confessed to the crime and asserted he would not have committed it, but for Delpha Jo's manipulation and his intoxication. Delpha Jo also confessed to her participation in the murder, but asserted she did so under duress. She told the police Woodward was "possessed" during the attack and threatened to harm her or her children if she did not help kill Dennis. She also told them he was a devil worshipper who licked Dennis' blood from his knife, and threatened her by saying his followers would hurt her if she reported the crime. Spunaugle and Woodward were tried jointly and convicted.[2]

## AVAILABILITY OF DURESS AS A DEFENSE TO MALICE MURDER

■ Spunaugle attempted to raise a duress defense to the charge of first degree malice murder. Duress has never been recognized in Oklahoma as a defense to that crime; in fact, this Court suggested in dicta the defense is barred by common law. *Tully v. State*, 730 P.2d 1206, 1209–10 (Okl.Cr. 1986). Interestingly, the validity of the defense was not challenged by the prosecutor or the Attorney General. We raise the question sua sponte, for if duress is not a valid

---

1. Woodward testified he did not remember whether Delpha Jo gave him the bat, or whether he picked it up.

2. David Woodward was sentenced to life without parole for the murder, and has perfected a separate appeal to this Court.

defense to malice murder, Spunaugle's arguments concerning inconsistent defenses would become moot.

The defense of duress in Oklahoma is a creature of statute. Title 21 O.S.1991, § 152(7), the first of three defining statutes, provides a person who commits a crime under duress is deemed incapable of committing the crime:

> All persons are capable of committing crimes, except those belonging to the following classes:
>
> . . . .
>
> 7) Persons who committed the act, or make the omission charged, while under involuntary subjection to the power of superiors.

Title 21 O.S.1991, § 155 reinforces the legal basis for the defense, and deems a person who commits a crime under duress fully exonerated of the crime:

> The involuntary subjection to the power of a superior which exonerates a person charged with a criminal act or omission from punishment therefor, arises from duress.

Title 21 O.S. Supp.1992, § 156, expanded to recognize people can be put under duress by threats to their spouse or child, completes the definition:

> A person is entitled to assert duress as a defense if that person committed a prohibited act or omission because of a reasonable belief that there was imminent danger of death or great bodily harm from another upon oneself, ones (sic) spouse or ones (sic) child.

█ To determine the extent and limit of this statutory defense, we begin with the language of the statute itself. If the language is self-explanatory, we need go no further. In this case we are greatly aided in this effort by clear and consistent statutory language.

First, as *Tully* recognized, the Oklahoma legislature did not limit the crimes to which the defense of duress can be asserted. 730 P.2d at 1208. We believe this is a policy choice and not an omission because it is supported by the rest of the defining language and the recent expansion of the defense.

The Oklahoma approach to duress contrasts sharply with the common law which has been hostile to the defense. One nineteenth century writer, J. Stephen, noted, "Compulsion by threats ought in no case whatever be admitted as an excuse for crime." *A History of the Criminal Law in England 108 (1883)*. While the common law does recognize the defense, it limits application of the duress defense considerably by grounding it in the so-called "choice of evils" moral philosophy of justification. Under this philosophy, one is not morally justified to commit a greater harm to avoid a lesser one. Thus, where harm is unavoidable, one may not choose to commit an equal or greater harm to avoid harm himself. J. Hall, *General Principles of Criminal Law* 422 (2d Ed.1947).

When this theory is applied to malice murder, the defense of duress is precluded, for when threatened by harm, a person "ought rather die himself than escape by the murder of an innocent." *4 W. Blackstone's Commentaries* 30. This theory is carried forward in the Model Penal Code. *See Model Penal Code and Commentary* § 3.02 and commentary at 9–22. States which follow this rationale limit the application of the duress defense to certain crimes. *See, e.g. Ky. Rev. Stat.* § 508.080; *Mo. Rev.Stat.* § 563.026.

Justification is but one of two legal theories supporting the defense of duress. The other foundation, wholly separate and distinct from the theory of justification, is the doctrine of excuse. This doctrine is at *367–387*; Finkelstein, *Duress: A Philosophical Account of the Defense in Law,* 37 Ariz. L.Rev. 251–283 (1995).

Under this legal doctrine, a person may be excused for committing a crime, even murder, if "men of ordinary firmness" would have acted in the same way to save their own lives. Model Penal Code § 2.09. The legal theory of excuse focuses on the *actor* and "represents the legal conclusion that the conduct is wrong, . . . but that criminal liability is inappropriate because some characteristics of the actor vitiates society's desire to punish him." Robinson, *Criminal Law Defenses: A*

*Systematic Analysis,* 83 Colum. L.Rev. 199, 229 (1982). La Fave and Scott acknowledge a majority of the modern codes take this approach, and that a significant number of the modern statutory schemes make the duress defense available "whatever the charge against the defendant." W. LaFave & A. Scott, *Criminal Law* 437 (2d ed. 1986).

Simply put, if the defense of duress is based on the legal theory of excuse in Oklahoma, it is available to answer a charge of first degree malice murder; if it is based on the legal theory of justification, it is not. To determine which theoretical underpinning supports the defense of duress in Oklahoma, we look once again to the plain language of the defining statutes.

Section 152(7) focuses on the actor, defining the person under duress as not capable of committing a crime. Section 155 focuses on the actor, and exonerates him if he acts under duress. Section 156, amended in 1992, entitles a person to the defense if that person acted as a result of a reasonable belief "there was imminent danger of death or great bodily harm" to himself, his spouse, or his child. All of the defining statutory language focuses on the *actor,* while none of it focuses on the act, or justification of the act.

In light of this clear and consistent statutory language, we conclude Oklahoma did not adopt the "choice of evils" theory of justification. Rather our defense of duress is based on the legal theory of excuse. Therefore, the *Tully* discussion of "choice of evils" and justification, while accurate for those states which use justification to support the defense of duress, has no application to the defense in Oklahoma. We find the defense of duress is available in Oklahoma to a defendant charged with the crime of first degree malice murder.[3]

■ Duress is an affirmative defense. The defendant bears the burden to present or elicit sufficient evidence to raise the defense, and if the defendant meets this burden, the burden then shifts to the State to disprove it beyond a reasonable doubt. The defense is exceptionally well defined by statute, and inherently includes important limits.

■ The threatened danger of death or great bodily harm must be *imminent.* 21 O.S. Supp.1992, § 156. The defendant's belief that death or great bodily harm is imminent must be *reasonable. Id.* Because duress is a valid defense only to a person under *involuntary subjection* to the power of a superior, the defense may be defeated by a showing that the defendant voluntarily or negligently placed himself in a position to be subjected to the power of a superior. *See* 21 O.S.1991, §§ 152(7); 155. Likewise, a showing that a defendant failed to avail himself of an opportunity to escape from the situation subjecting him to duress would negate the *involuntary* subjection element and defeat the defense.

Having found duress is available to a defendant charged with first degree malice murder, we now examine Spunaugle's substantive claims.

### TRIAL COURT DENIAL OF MOTION TO SEVER

Spunaugle filed a motion to sever her trial from that of co-defendant David Woodward. Woodward opposed the motion vigorously while the State remained neutral. The trial court denied the motion to sever, and Spu-

---

3. Judge Lumpkin's dissent might pass as a sermon. He decries the existence of any defense to first degree murder. He cites inapplicable statutory "authority", and he imposes his own finding of fact without the proper assertion or testing of those facts at trial. The opinions stated are not grounded in the law of this case, and so I must respond.

That portion of the dissent which condemns the duress defense as an invidious incursion of situational ethics, that is, an erosion of moral values, is equally suited to any of the defenses to first degree murder, including self-defense.

J. Lumpkin's theory of statutory construction seems to be that because Oklahoma has the defenses of justifiable homicide and excusable homicide, it must not have the defense of duress to homicide. *See 21 O.S.1991, §§* 731 and 733. This makes about as much sense to me as arguing that as a result of sections 731 and 733, Oklahoma does not recognize the defense of self-defense. There is no implicit or explicit limitation of the defense of duress, or self-defense for that matter, in the sections cited in the dissent.

naugle claims in her first and third propositions this was error.

■ The decision to sever the trial of co-defendants is left to the sound discretion of the trial court subject to statutory guidance: severance shall be granted if it appears the defendant or the State is prejudiced by joinder. 22 O.S.1991, § 439. The statute does not define or limit the circumstances under which prejudice might arise, and the circumstances of this case present a novel facet of the problem.

■ Perhaps the best known example of prejudice requiring severance is that which arises when co-defendants assert mutually antagonistic defenses. *See e.g., Lafevers v. State,* 819 P.2d 1362, 1364–65 (Okl.Cr.1991); *Neill v. State,* 827 P.2d 884, 887–88 (Okl.Cr. 1992). Mutually antagonistic defenses occur when each defendant attempts to exculpate himself and inculpate the co-defendant. *Hammon v. State,* 898 P.2d 1287, 1292 (Okl. Cr.1995). This Court has defined defenses to be antagonistic when "to believe one is to disbelieve the other." *Neill,* 827 P.2d at 888. The defenses of Spunaugle and Woodward fit this definition, and as such could be considered mutually antagonistic. However, this Court has not found defenses to be mutually antagonistic unless each is a complete defense to guilt. *Lafevers,* 819 P.2d at 1366.

Duress, raised by Spunaugle, is a complete defense to guilt. Voluntary intoxication [4] and influence, raised by Woodward, are not. These asymmetric defenses are not mutually antagonistic and do not mandate severance.

■ Severance is also required when the State introduces the confession of a non-testifying co-defendant which inculpates another co-defendant. *Plantz v. State,* 876 P.2d 268, 273 (Okl.Cr.1994), *cert. denied,* 513 U.S. 1163, 115 S.Ct. 1130, 130 L.Ed.2d 1091 (1995). Woodward testified; Spunaugle didn't. The State was allowed to introduce those portions of Spunaugle's confession which inculpated her, but Spunaugle was not allowed to introduce those portions of her confession which exculpated herself, but inculpated Woodward. While this procedure squares with the *Plantz* rule, prejudice resulted nevertheless.

Woodward filed a motion in limine to bar all of Spunaugle's confessional statements regarding Woodward's alleged devil worship and his threats to kill her or her children if she did not help kill Dennis Spunaugle. This was the evidence Spunaugle had to support her defense of duress. By granting Woodward's motion, the trial court gutted Spunaugle's right to present a defense.[5] This result satisfies the prejudice standard of 22 O.S. 1991, § 436.

This prejudice was compounded by the fact the trial court allowed the State to introduce all of the inculpating statements Spunaugle made in her confession, while prohibiting Spunaugle from introducing any of the exculpating statements she made during the same confession. This glaring error prompted the prosecutor to argue vigorously that all of Spunaugle's confession should be admitted at trial. We agree. Where the State introduces inculpatory confessional statements, the confessor shall be allowed to introduce exculpating statements made in the same confession. *See Williams v. State,* 915 P.2d 371, 380 (Okl.Cr.1996); *Brewer v. State,* 414 P.2d 559, 560 (Okl.Cr.1966). Once the trial court realized Spunaugle's confession contained evidence which it believed should not be before the jury which was determining Woodward's guilt, severance should have been granted. These evidentiary circumstances require reversal.

Our ruling today should not be interpreted as a comment on the credibility of the defense. Spunaugle had the right to present a defense. After a defense is presented the trial court has the duty to determine whether it is adequately raised to warrant instruction, and if so, the finder of fact then must deter-

---

4. Woodward argues in his appeal that the trial court erred by denying an instruction on involuntary intoxication, a complete defense to guilt. We address this issue in the Woodward appeal.

5. Spunaugle's counsel was able to elicit testimony that Spunaugle stated she participated in the murder under duress. This bland summation does not take the place of being able to present the details of the defense for the jury to consider.

mine whether the defense is worthy of belief.[6]

## PEREMPTORY CHALLENGES

Spunaugle's defense at trial, though wrongly hampered by the trial court, was that she participated in the murder of her husband under duress of threat of death to herself or her children. Duress is a complete defense to guilt. Woodward's defense of voluntary intoxication and undue influence by Delpha Jo Spunaugle is not a complete defense to guilt and would only lessen the degree of the crime, and mitigate punishment. Because Spunaugle tried to completely exonerate herself of guilt at Woodward's expense, the defenses of the co-defendants were inconsistent. *See Plantz*, 876 P.2d at 276; *Bryson v. State*, 876 P.2d 240, 250 (Okl. Cr.1994), *cert. denied*, 513 U.S. 1090, 115 S.Ct. 752, 130 L.Ed.2d 651 (1995).

Title 22 O.S.1991, § 655 provides that co-defendants who assert inconsistent defenses are each entitled to nine peremptory challenges. Spunaugle and Woodward requested nine peremptory challenges each under this statutory authority, and the trial court correctly granted the motion. *See Bryson*, 876 P.2d at 250. However, after sharp challenge by the prosecutor, the trial court reversed itself in part and ruled the defendants would not each receive nine challenges as provided by statute, but would each receive six. Woodward's counsel accepted this unauthorized compromise when the State threatened to sever the trial. Spunaugle's counsel objected, and further perfected the issue for appeal by stating on the record he would remove two additional veniremen if he had been given the proper number of peremptory challenges. In her second prop-

osition of error Spunaugle argues this error requires reversal.

A criminal defendant has a due process right to the number of peremptory challenges allowed by state law, and that right is denied or impaired when the criminal defendant does not receive that which state law provides. *Ross v. Oklahoma*, 487 U.S. 81, 89, 108 S.Ct. 2273, 2279, 101 L.Ed.2d 80 (1988). Because state law granted Spunaugle nine separate peremptory challenges, but the trial withheld three of these, Spunaugle's due process right to peremptory challenges was impaired. This constitutional error may be found harmless if it is a trial error, that is, an error which occurred during the presentation of the case to the jury, but it may not be found harmless if it is a structural defect in the trial mechanism. *Bartell v. State*, 881 P.2d 92, 98 (Okl.Cr.1994).

The denial of three peremptory challenges is an error in the jury selection process which pervaded the entire trial. This error was not waived, and facts sufficient to prove prejudice are contained in the record, for counsel made a record of those venireman he would remove if he had the correct number of peremptory challenges. *Salazar v. State*, 919 P.2d 1120, 1128–29 (Okl.Cr.1996). One of these was the sleeping juror who, as discussed below, erroneously was not replaced when her slumber was brought to the attention of the trial court. Under the analysis set forth in *Bartell*, the denial of three peremptory challenges is error which is not subject to harmless error analysis. This error warrants reversal.

## FAILURE TO REMOVE A SLEEPING JUROR

Before first-stage closing argument defense counsel joined in a motion to

---

**6.** Imposing his own findings of fact, J. Lumpkin makes clear *he does not believe the appellant* when she argues she killed under duress. These facts were not fully asserted at trial to the trier of fact, and as a result they were not fully tested at trial. Consequently, the dissent's speculation about the facts is irrelevant. The question to this Court on appeal is whether the accused was denied the constitutional right to present a defense.

Lumpkin attempts to prove *his finding* of fact is correct by making much of the fact the appellant

attempted for years to hire someone to murder her husband. This argument proves up the wisdom of our judicial system which removes appellate judges from the role of trier of fact. Our role, when the record is properly developed, is to determine if the decision of the trier of fact is supported by the record. But here the defendant was prohibited from fully developing her defense. If the defense is asserted upon retrial, the trier of fact will determine whether it is to be believed.

replace a juror who slept during parts of the trial. This motion was timely made, and thus the objection is fully perfected. *Randleman v. State*, 552 P.2d 90, 93 (Okl.Cr. 1976). Juror misconduct must be proven by clear and convincing evidence, and in this case was. *See Wofford v. State*, 494 P.2d 672, 675 (Okl.Cr.1972). The trial judge stated on the record the juror had "dozed during parts of the trial", and had paid attention "for the most part." The trial judge then denied the motion to replace the dozing juror with the available alternate.

In a capital murder case in which the jury found guilt and set punishment at death, the participation of a juror who "dosed during parts of the trial" is an unacceptable degradation of due process which requires reversal.[7]

## GRUESOME PHOTOGRAPH

State's Exhibit No. 5 is a close-up color photo of the maggot infested remains of Dennis Spunaugle. The photo vividly displays a repulsive, grainy blanket of maggots efficiently consuming the remains. Spunaugle's counsel objected to the admission of this photograph on the grounds it was cumulative and its probative value was greatly outweighed by its prejudicial effect. 12 O.S. 1991, § 2404. The State argued the photograph corroborated the medical examiner's testimony that the body was in a stage of decay which effaced soft tissue wounds, it corroborated Woodward's testimony that Dennis Spunaugle died in his underwear, and it showed the location of Dennis Spunaugle's tennis shoes.

The outcome of the weighing of probative value against prejudicial effect depends to a great extent on the degree of probative value. In *Robedeaux v. State*, 866 P.2d 417, 424–25 (Okl.Cr.1993), *cert. denied*, 513 U.S. 833, 115 S.Ct. 110, 130 L.Ed.2d 57 (1994) the probative value of the photograph of dismembered body parts was great, and so the undeniable gruesome nature of the photograph did not outweigh its probative value. Where probative value is minimal, and the photograph most vividly shows the handiwork of nature and not the defendant, admission should be denied. *Mann v. State*, 749 P.2d 1151, 1156 (Okl.Cr.), *cert. denied*, 488 U.S. 877, 109 S.Ct. 193, 102 L.Ed.2d 163 (1988).

State's Exhibit No. 5 was cumulative of State's Exhibit No. 8. Both photos showed the decomposition, but the relative distance from which Exhibit No. 8 was taken removes much of the prejudicial value of that photograph. The corroborative value of Exhibit No. 5 is weakened by the fact it corroborates irrelevant, or barely relevant facts. The position of Spunaugle's tennis shoes has no relevance whatsoever in this trial. The corroboration of Woodward's confession is most vividly realized by the fact the body was found where he said it would be found. The fact Spunaugle is in his underpants is not well corroborated by Exhibit No. 5 due to the thick layer of maggots obscuring this detail. Given the very weak probative value and the great prejudicial value of this photograph, the trial court should have denied admission of State's Exhibit No. 5. We need not, and do not reach the question whether the admission of this photograph would warrant reversal, had it been the only trial error.

## DECISION

Judgment and sentence on each count is **REVERSED** and **REMANDED** for new trial.

CHAPEL, P.J., and STRUBHAR, V.P.J., concur.

JOHNSON and LUMPKIN, JJ., dissent.

LUMPKIN, Judge, dissenting:

I must dissent to the Court's decision in this case in that it is tragically flawed in two very important aspects. First, the Court completely disregards the historical develop-

---

7. I am most puzzled by the fact the dissent cannot accept the *facts* of record. One wonders what evidence could be more clear and convincing than the trial judge stating the juror in question had paid attention, "for the most part." No amount of appellate gloss or wishful thinking can change the fact that by so ruling, the trial judge also ruled, by definition, that this juror did not pay attention to all of the trial. To suggest otherwise is to let one's belief in the guilt of the accused outweigh the constitutional standards of trial by jury.

ment of the duress defense it enumerates in the opinion, which has not been devalued by statutory enactment and therefore should be the cornerstone of our analysis. Second and more important, the Court disregards the fact the Oklahoma Legislature has limited the defense by statute, choosing instead to ignore our state law by dwelling on the Model Penal Code in a feeble attempt to justify its own fuzzy analysis. I shall address that first.

The opinion gives lip service to the interpretation of "clear and consistent statutory language" in its attempt to justify the result reached. However, in its selective approach to identify that "clear and consistent" language it totally disregards the statutory provisions which control in this case. We need not stray to foreign statutes. The Oklahoma Legislature has limited the application of legal excuse and justification, which the Court recognizes constitute the legal basis for the duress defense, for the crime of homicide by statute. Excuse is limited by 21 O.S.1991, § 731, which reads:

Homicide is excusable in the following cases:

1. When committed by accident and misfortune in doing any lawful act, by lawful means, with usual and ordinary caution, and without any unlawful intent.

2. When committed by accident and misfortune in the heat of passion, upon any sudden and sufficient provocation, or upon a sudden combat provided that no undue advantage is taken, nor any dangerous weapon used, and that the killing is not done in a cruel or unusual manner.

Justifiable homicide is controlled by statute, at 21 O.S.1991, § 733. That section reads:

Homicide is also justifiable when committed by any person in either of the following cases:

1. When resisting any attempt to murder such person, or to commit any felony upon him, or upon or in any dwelling house in which such person is; or,

2. When committed in the lawful defense of such person, or of his or her husband, wife, parent, child, master, mistress, or servant, when there is a reasonable ground to apprehend a design to commit a felony, or to do some great personal injury, and imminent danger of such design being accomplished; or,

3. When necessarily committed in attempting, by lawful ways and means, to apprehend any person for any felony committed; or in lawfully suppressing any riot; or in lawfully keeping and preserving the peace.

These two statutory provisions codify the legal underpinnings of the theory of the duress defense and determine the limited application of justification or excuse to the crime of homicide.[1] The evidence presented, and sought to be presented as revealed by the record on appeal, in this case does not meet the requirements for either justification or excuse as restricted by these statutes.

Three other statutes are also important to the correct analysis, if only to show they do not apply. Section 152(7) of Title 21 reads that "[a]all persons are capable of committing crimes, except ... Persons who committed the act, or make the omission charged, while under involuntary subjection to the power of superiors." Section 155 of Title 21 states that "[t]he involuntary subjection to the power of a superior which exonerates a person charged with a criminal act or omission from punishment therefor, arises from duress." Section 156 of Title 21 dictates that "[t]he duress which excuses a person from punishment who has committed a prohibited act or omission must be an actual compulsion by use of force or fear."

The analysis should be as follows: Sections 152(7), 155 & 156 of Title 21 are general

---

1. These statutes legally eviscerate the Court's vision that justification is not encompassed within our Legislature's application of the concept of duress to the crime of homicide. In addition, this analysis points out the Court has disregarded the basic rule of statutory construction that a special statute that sets forth a specific require-

ment controls over a general statute. *See Lozoya v. State*, 932 P.2d 22, 28–29 (Okl.Cr.1996); *Crawford v. State*, 881 P.2d 88, 92 (Okl.Cr.1994); *Stiles v. State*, 829 P.2d 984, 989 (Okl.Cr.1992); *Bowman v. State*, 789 P.2d 631, 632 (Okl.Cr. 1990); *State v. Woodward*, 737 P.2d 569, 570–571 (Okl.Cr.1987).

statutes and must be read as limitations on criminal liability in statutes **other than those dealing with homicides**. However, **as the defense pertains to homicides,** the Oklahoma Legislature has adopted two very specific statutes dealing with the duress defense, i.e. justification and excuse. As a result, the Legislature has limited defenses to homicides on the basis of justification or excuse, i.e. duress, to those requirements and no other. **In this case,** the evidence does not meet the requirements of either Sections 731 or 733; therefore there is no error for failure to allow the additional evidence.[2] This analysis maintains the application of the Common Law to criminal law and procedure absent legislative action and gives force to the specific provisions of the statutes.

That is what *should* take place in our analysis. Instead, this Court engages in a fuzzy and ill-focused "well-it-just-isn't-fair" analysis to authorize a procedure which directly contradicts State law. This Court is charged with applying applicable rules of law to ensure consistent well-grounded opinions which provide certainty in the application of substantive criminal law to the citizens of this State. The Court's decision in this case disregards that responsibility and seeks to justify a result that is in direct conflict with state law and historical legal precedent.

This is a tragedy. From a legal standpoint, the adolescent, sociological concept of situation ethics has now crept into our application of the Rule of Law. From a non-legal standpoint, the ruling denigrates and cheapens the value of human life.[3]

There can be no explanation other than that the Court seeks to base its decision on an interpretation of statutory language in a vacuum, totally divorced from the legal history which fashioned the defense of duress and the rules of statutory construction. It would be nice if we could be like baby ducks and wake up in a new world every day, but legally we cannot. We are bound by precedent and the development of judicial principles. Through an understanding of the legal metamorphosis we are then able to have a vision of the societal purpose developed from the foundation established in the Ten Commandments[4]; through ancient codes; into the Common Law; and now the statutory enactments which set out the scope of our substantive criminal law. If we disregard the underlying basis for our system of laws then we are engaging in one of the greatest acts of futility of humankind, perceiving mere knowledge as wisdom.

Since the Court's action is predicated on the flawed interpretation of the scope and application of the defense of duress, limited comment is necessary on other propositions of error. Turning to the issue of peremptory challenges, 22 O.S.1991, § 655 provides in pertinent part:

**2.** It should be noted the jury in this case was instructed on the defense of duress utilizing OUJI–CR 716, 717–718 and 719 (O.R.291) and instructed it was the State's burden to prove the defendant was not acting under duress. Therefore, the only issue is the limitation by the trial court of the evidence allowed to be presented to support the defense. Regardless of the standard of review applied in this case, if the Court's ruling was error, it would be harmless.

**3.** Although it did not figure into the legal analysis contained herein, it is this writer's personal opinion that the law has been formulated over the ages to provide the plumb-line of moral guidance to humanity, not to be utilized to denigrate the values to which society should aspire. Whether it is from the language of the scriptures ("Greater love has no man than this, that a man lay down his life for his friends." John 15:13(RSV)), or, as the opinion quotes the common law, "he ought rather to die himself than escape by the murder of an innocent," the value of human life must always be respected. For that reason we limit the application of the ultimate punishment to those instances where an individual defies that basic tenet of civilization. The distinction we see today is the scriptures and common law were both based on the foundation of moral absolutes required to ensure the survival of an ordered civilization, while our present society seems to cultivate the learned helplessness engendered through lack of individual accountability and responsibility. It is only from this bed of shifting sand that one can possibly come to a conclusion it is justifiable for an individual to have the legal authority to determine an innocent life can be snuffed out merely to protect one's own skin. The civic virtue, much less the perspective of the value of human life, once deemed imperative to the survival of our Republic has now been diluted to the point it does not appear to be even microscopically present in our societal thought process.

**4.** Exodus 20: 1–17.

In all criminal cases the prosecution and the defendant are each entitled to the following peremptory challenges: Provided, that if two or more defendants are tried jointly they shall join in their challenges; provided, that when two or more defendants have inconsistent defenses they shall be granted separate challenges for each defendant as hereinafter set forth.

First. In prosecutions for first degree murder, nine jurors each.

In *Neill v. State,* 827 P.2d 884, 891 (Okl.Cr. 1992), we discussed inconsistent defenses and stated:

In analyzing the law of inconsistent defenses, we have found that in some cases, the "inconsistency" goes to the level of culpability while in other cases the "inconsistency" goes to guilt or innocence. Where the issue is restricted to the level of each co-defendant's culpability, co-defendants may be required to share peremptory challenges. (cites omitted). However, where the "inconsistency" in the defenses relates directly to guilt or innocence, co-defendants must be granted separate challenges. (cite omitted).

See also *Plantz v. State,* 876 P.2d 268, 276 (Okl.Cr.1994), *cert. denied,* 513 U.S. 1163, 115 S.Ct. 1130, 130 L.Ed.2d 1091 (1995). Here, any inconsistency in the defenses went only to the level of culpability, therefore Appellant and her co-defendant should have shared the nine peremptory challenges. The result of the trial court's ruling granting each defendant six peremptories will be discussed later. First, I will explain why each defendant was not entitled to 9 separate peremptories.

As set out above, the defense of duress is not applicable to first degree malice aforethought murder. *See also, Tully v. State,* 730 P.2d 1206, 1208–1210 (Okl.Cr.1986). Therefore, under the law, Appellant was not entitled to the defense of duress for the intentional killing of her husband. (Further, under the evidence revealed in the record before this Court she was not entitled to the defense of duress as the uncontradicted evidence showed that prior to Woodward consenting to help her, Appellant had solicited others to help her kill her husband.)[5] Any attempt by Appellant to rely upon the defense of duress merely goes to her level of culpability.

Likewise, co-defendant Woodward's reliance on the defense of voluntary intoxication went only to his level of culpability. Title 21 O.S.1991, § 704 provides that "homicide committed with a design to effect death is not the less murder because the perpetrator was in a state of anger of voluntary intoxication."[6] Therefore, voluntary intoxication cannot be used as a defense or excuse to the crime of intentional murder and co-defendant Woodward's reliance on this defense goes only to his culpability. Due to the fact that neither the duress defense nor the voluntary intoxication defense could have been relied upon to absolve either defendant of guilt, the evidence could only have been relied upon to lessen the level of culpability. Thus under *Neill,* the 2 defendants should have shared nine peremptory challenges. In addition, severance was not required.

The trial court's error in not requiring Appellant and co-defendant Woodward to share the nine peremptory challenges is subject to a harmless error analysis. 20 O.S. 1991, § 3001.1. As Appellant and her co-defendant each received six peremptories, more than they would have had if they had shared the challenges, the trial court's ruling did not result in "a miscarriage of justice, or constitute[s] a substantial violation of a constitutional or statutory right." *Id. See also Ross v. Oklahoma,* 487 U.S. 81, 108 S.Ct. 2273, 101 L.Ed.2d 80 (1988) (federal guaran-

5. In August 1993, Appellant paid a man $500.00 to murder her husband but the man took her money and left without killing the victim. Appellant then recruited Charles Holycross to murder the victim. She called Holycross several times and offered him $1,000.00 to kill the victim but Holycross refused to commit the murder.

6. 22 O.S.1991, § 153 also provides that voluntary intoxication is not a defense to criminal

culpability. However, we recognize an exception to this rule where the accused was so intoxicated that his/her mental abilities were totally overcome and it therefore became impossible for him/her to form criminal intent. *Crawford v. State,* 840 P.2d 627, 638 (Okl.Cr.1992). Therefore, while voluntary intoxication may go to the specific intent so as to reduce a killing to another level of homicide, that is not the issue here.

tee of due process requires only that a defendant receive all the peremptory challenges allowed by state law) and *Fox v. State,* 779 P.2d 562 (Okl.Cr.1989), *cert. denied,* 494 U.S. 1060, 110 S.Ct. 1538, 108 L.Ed.2d 777 (1990) (the state constitution likewise is satisfied when a defendant receives the peremptory challenges allowable pursuant to state law).

I also disagree with the opinion's finding that juror misconduct was proven by clear and convincing evidence. Appellant has offered no support for her claim that the juror in question was not paying attention. Prior to first stage closing argument, counsel for co-defendant Woodward moved to excuse the juror because she had "slept throughout this whole trial." However, the record presented to this Court on appeal is void of any attempts by Appellant or co-defendant Woodward to bring this alleged conduct to the trial judge's attention while the conduct was occurring. Further, there was no finding that the juror had actually been sleeping or that she missed a substantial portion of the trial.

The trial judge who sits in the courtroom and sees the jurors first-hand is in a much better position to determine the level of a juror's attentiveness. As Appellant has not supported her claim of juror misconduct by clear and convincing evidence, I find no error in the trial court's refusal to replace the juror.

I dissent to the Court's decision to reverse and remand this case for a new trial. Any error was harmless beyond a reasonable doubt and the judgment and sentence should be affirmed.