2003 OK CR 14

**Justin Ryan LONG, Appellant,**

v.

**STATE of Oklahoma, Appellee.**

**No. F–2001–1452.**

Court of Criminal Appeals of Oklahoma.

July 16, 2003.

Don J. Gutteridge, Jr., Indigent Defense System, OKlahoma City, OK, Attorney for Defendant at trial.

Robert Eugene Christian, District Attorney, Sue Taylor, Assistant District Attorney, Duncan, OK, Attorneys for State at trial.

Lisbeth L. McCarty, Appellant Defense Counsel, Indigent Defense System, Norman, OK, Attorney for Appellant on appeal.

W.A. Drew Edmondson, Attorney General, Kellye Bates, Assistant Attorney General, Oklahoma City, OK, Attorneys for Appellee on appeal.

## OPINION ON REHEARING

LILE, Vice Presiding Judge:

¶ 1 Appellant, Justin Ryan Long, was convicted after a non-jury trial of First Degree Malice Aforethought Murder in violation of 21 O.S.Supp.1998, § 701.7(A), in the District Court of Stephens County, Case No. CF-2000-145. The Honorable George W. Lindley, District Judge, sentenced Appellant to life imprisonment without the possibility of

parole. Appellant has perfected his appeal to this Court.[1]

¶2 On May 1, 2000, Appellant, then 15 years of age, stabbed his adoptive father, Hoyt Long, to death.

¶3 Appellant first challenges his waiver of jury trial on the grounds that the record is insufficient to show a competent, knowing and intelligent waiver by a minor of average intelligence who had suffered horrific physical and sexual abuse resulting in various mental illnesses and a history of immature thinking. Our case law establishes that "the right of trial by jury can be waived only if there is a clear showing that such waiver was competently, knowingly and intelligently given." *Bench v. State*, 1987 OK CR 191, 743 P.2d 140; *Kerr v. State*, 1987 OK CR 136, 738 P.2d 1370; *Colbert v. State*, 1982 OK CR 174, 654 P.2d 624; *See also Westbrook v. Arizona*, 384 U.S. 150, 86 S.Ct. 1320, 16 L.Ed.2d 429 (1966). Appellant relies for this argument on a sketchy court minute that memorializes the appearance, waiver and setting of a non-jury trial date. However, an examination of the transcripts on appeal discloses an appearance by Appellant, with counsel, before the trial judge for the specific purpose of considering a waiver of jury trial. The trial court properly questioned both counsel and Appellant concerning the waiver, Appellant's competency and understanding, and the voluntariness of the waiver. The trial court made a finding consistent with our law and the facts of record, which we see no reason to disturb. This proposition is denied.

¶4 Appellant next complains, for the first time on appeal, that the trial judge improperly heard a taped confession, which he later suppressed. We do not review the admissibility of the taped confession but rather the non-jury trial procedure used here. This procedure is not unusual. The trial court heard the recording as part of the motion to suppress and then granted the motion. We presume, when a trial court operates as the trier of fact, that only competent and admissible evidence is considered in reaching a decision. *Borden v. State*, 1985 OK CR 151, 710 P.2d 116; *Fox v. State*, 1976 OK CR 307, 556 P.2d 1281. There is certainly nothing in the record nor raised by Appellant's arguments to overcome that presumption. This was an experienced trial judge, Appellant confessed again at trial, and evidence independent of any confessions overwhelmingly supported the verdict. This proposition is denied.

¶5 Appellant asserts that there was insufficient evidence to establish he intended to kill his father. We review the evidence in the light most favorable to the State and determine if a rational fact-finder could have found the elements of the crime beyond a reasonable doubt. *Spuehler v. State*, 1985 OK CR 132, 709 P.2d 202. Here, Appellant considered what to do as he sat by his sleeping father with weapons in hand. He admitted that he knew his father would probably die. He stabbed his father twice in the chest with a dagger and when his father awoke he stabbed him three times in the neck with a knife. As his mother approached, Appellant told her to let him die. This proposition is denied.

¶6 Appellant asserts that the sentence is excessive. We examine under the rule of *Rea v. State*, 2001 OK CR 28, 34 P.3d 148, and decades of similar precedent. If the sentence is within the range prescribed by the statute and if it does not shock the conscience of the Court, we will not modify the sentence. The State recommended a life sentence and Appellant asserts that the trial judge improperly gave a harsher sentence. The recommendation of the State is just that, a recommendation. Sentencing, in a non-jury trial, is the duty of the trial judge. The extreme hardship suffered by this Appellant was a strong mitigating influence. The fact that the possibility of rehabilitation was very slim and the utter brutality of this crime were strong aggravators. We are unable to say, under all of the facts of this case, that the sentence should be modified. This proposition is denied.

1. The original opinion issued herein was withdrawn following motion for rehearing on May 14, 2002.

¶ 7 Appellant asserts that he was denied the right of closing argument and cites statutory authority that requires the court to allow closing argument in a jury trial. 12 O.S.1991, § 577, and 22 O.S.1991, § 831. These statutes, on their face, apply to jury trials and not trials by a judge. Appellant also cites Oklahoma Constitution, Art. II, § 20, which provides that an accused "shall have the right to be heard by himself and counsel...." This constitutional provision has never been interpreted to require a trial judge to hear closing arguments in a non-jury trial.

¶ 8 It is true that "a trial judge may not deny absolutely the opportunity for any closing summation at all." *Herring v. New York,* 422 U.S. 853, 95 S.Ct. 2550, 45 L.Ed.2d 593 (1975). In *Herring,* a New York statute allowed a judge presiding over a non-jury criminal trial to refuse to hear any closing argument on behalf of a defendant. Acting under that authority, the trial judge in *Herring* denied the request of counsel for the defendant to make a closing argument. The United States Supreme Court found the absolute denial to violate the Sixth Amendment guarantee of "assistance of counsel." *Herring,* 422 U.S. at 865, 95 S.Ct. at 2556.

¶ 9 The facts of the case before us lead to a different result. Here, the defendant did not request closing argument and did not object when the trial court began to pronounce its verdict at the close of the evidence. Where Appellant did not request closing argument or object when the trial court did not ask for same, the right to argue is waived. *See Moore v. State,* 1987 OK CR 68, 736 P.2d 161 (waiver of closing as sound trial strategy). At most we examine for plain error in such an event and we find none here. *Simpson v. State,* 1994 OK CR 40, 876 P.2d 690.

¶ 10 Appellant next complains that his trial counsel was ineffective under *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and our cases applying the rule of *Strickland.* Appellant asserts that his trial counsel should have raised the defense of duress, because he "suffered from corporal punishment, and the

reason he stabbed his adoptive father was to prevent further corporal punishment." This presents a claim in the nature of self-defense, not a claim of duress.

¶ 11 In the case of the battered woman syndrome, we treat the defense as one in the nature of self-defense. *Bechtel v. State,* 1992 OK CR 55, 840 P.2d 1. Likewise, where the victim is also the same person claimed to be exerting duress, the issue is self-defense. The duress defense envisions a third person compelling the defendant by the threat of immediate physical violence to commit a crime against another person or the property of another.

¶ 12 Additionally, duress is not a defense to the intentional taking of an innocent life by a threatened person. *Tully v. State,* 1986 OK CR 185, 730 P.2d 1206.

¶ 13 Clearly, the defense of duress has its origin in the common law and is "based on society's realization that a person, when faced with the choice of two evils, should not be punished for accomplishing the lesser evil, and thereby avoiding the crime of greater magnitude." *Tully,* 730 P.2d at 1209.

¶ 14 Equally clear is the common law limitation of the defense as stated by *Blackstone,* that when the harm contemplated by the defendant is greater than, or equal to, the threatened harm, "he ought rather to die himself than escape by the murder of an innocent." 4 W. Blackstone, *Commentaries* 30.

¶ 15 It is generally accepted that duress is not a defense to taking the life of an innocent person. Annot., 40 A.L.R.2d 906–07. As stated at *Wharton's Criminal Law,* 15th Edition, § 52: "At common law ... a defendant is not allowed to take the life of an innocent third person even when he is ordered to do so under a threat of instant death."

¶ 16 Any other rule is simply repugnant to nearly universal standards of decency developed over many decades of human experience. Oklahoma has specifically delineated those legally acceptable justifications and excuses for homicide, which are set forth at 21 O.S.2001 §§ 731 & 733. Duress is neither an

excuse for nor a justification of homicide under Oklahoma law.

▮ ¶ 17 The reasoning set forth in *Tully* was compelling then and remains compelling today. As we said in *Tully*, "[T]he rationale for denial of this defense to intentional killing is premised on the theory that one should risk or sacrifice one's own life rather than take the life of an innocent person." *Tully*, 730 P.2d at 1210.

¶ 18 This long-standing rule of the common law, unmodified by statutory enactment, was improperly modified in *Spunaugle v. State*, 1997 OK CR 47, 946 P.2d 246, which we today overrule to the extent that it conflicts with this pronouncement.

▮ ¶ 19 Since the defense of duress was not appropriate under the facts of this case and since we find a valid waiver of the right to jury trial and we find that that trial counsel's failure to preserve the right to closing argument was sound trial strategy, we can find no ineffective assistance of trial counsel by reason of counsel not pursuing these matters. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

▮ ¶ 20 Appellant's claim of cumulative error must be denied because we find no error in any of Appellant's propositions. *Alverson v. State*, 1999 OK CR 21, 983 P.2d 498.

### DECISION

¶ 21 Appellant, Justin Ryan Long, was convicted at jury trial of First Degree Malice Aforethought Murder in violation of 21 O.S.Supp.1998, § 701.7(A), in the District Court of Stephens County, Case No. CF–2000–145. The Honorable George W. Lindley, District Judge, sentenced Appellant to life imprisonment without the possibility of parole. The Judgment and Sentence of the district court are **AFFIRMED**.

JOHNSON, P.J., and LUMPKIN, J., concur.

STRUBHAR, J., concurs in results.

CHAPEL, J., dissents.

CHAPEL, Judge, dissenting:

¶ 1 I dissent from today's Court opinion based upon its resolution of Long's claim regarding his right to present a closing argument, as well as the opinion's discussion of the legal defense of duress.

¶ 2 In *Herring v. New York*,[1] the Supreme Court held that a defendant has a constitutional right to make a closing argument, even in a bench trial.[2] The Court wrote, "There can be no doubt that closing argument for the defense is a basic element of the adversary factfinding process in a criminal trial."[3] The Court likewise recognized closing arguments as being critical to the "ultimate objective" of the criminal trial process:

> The very premise of our adversary system of criminal justice is that partisan advocacy on both sides of a case will best promote the ultimate objective that the guilty be convicted and the innocent go free. In a criminal trial, which is in the end basically a factfinding process, no aspect of such advocacy could be more important than the opportunity finally to marshal the evidence for each side before submission of the case to judgment.[4]

¶ 3 In light of *Herring* and its recognition of the critical importance of a defendant's right to present closing arguments, I dissent from today's holding that this constitutional

---

1. 422 U.S. 853, 95 S.Ct. 2550, 45 L.Ed.2d 593 (1975). The *Herring* holding was first raise on rehearing and is the reason this Court granted a rehearing in the case.

2. *Id.* at 865, 95 S.Ct. 2550 (holding that denial of defendant's request to make closing argument, based upon New York statute making presentation of such arguments discretionary in bench trials, violated defendant's Sixth Amendment right to the assistance of counsel). I do not understand the inclusion of Paragraph 7 in today's Court opinion, which is a holdover from the opinion originally issued in this case—before the significance of *Herring* was raised on rehearing. Whether the right to present closing argument in a bench trial exists under state law is a purely academic issue at this point, since *Herring* compels our recognition of this right under federal law.

3. *Id.* at 858, 95 S.Ct. 2550.

4. *Id.* at 862, 95 S.Ct. 2550.

right will be presumed waived if a defendant merely fails to object when a trial court begins to announce its judgment immediately after the close of evidence. While this right, like most constitutional rights, can certainly be waived, waiver should be found only where a defendant or his counsel actually announces a decision not to present closing argument. Waiver should be found only where the defendant affirmatively waives his right to present a closing argument, not merely from silence or inaction.[5]

¶ 4 Furthermore, the Court's conclusory finding, at the conclusion of today's opinion, that "trial counsel's failure to preserve the right to closing argument was sound trial strategy" is not supported by the record in this case—from which it does not appear that the failure was even a "strategy," let alone a sound one. Nor is the finding supported by any argument or legal authority.

¶ 5 In addition, while I agree that counsel was not ineffective in this case for failing to raise the defense of duress, I strongly disagree with the majority's decision with respect to that defense. The Oklahoma legislature has set forth the defense of duress, exonerating defendants who commit crimes while involuntarily subject to the power of a superior.[6] The Legislature has specifically provided that a person is entitled to assert duress as a defense if he commits a prohibited act because he has a reasonable belief that he, a spouse, or a child, is in imminent danger of death or great bodily harm from another.[7] In *Spunaugle v. State*,[8] a case of first impression, this Court examined the clear language of the statute, concluded that the Legislature meant what it said, and reaffirmed the principle that duress is a defense

to malice murder. Today the majority ignores the letter and spirit of the statutes and overrules *Spunaugle*, because it finds any other result would be "repugnant to nearly universal standards of decency." This displays a contempt for our precedent and the legislative process with which I cannot agree.

¶ 6 Underlying the majority's decision is a belief that "duress is not a defense to taking the life of an innocent person." This belief is directly contradicted by the statutory language, which makes no exception for an "innocent" victim where the statutory requirements are met. In order to bolster this belief, the majority relies on dicta from *Tully v. State*.[9] As we noted in *Spunaugle*, the discussion of duress in *Tully* focused solely on justification and did not take into account the explicit language of Oklahoma's statutes, which focus on the legal theory of excuse.[10] Rather than acknowledge this, the majority treats *Tully* as binding precedent. This is simply not the case.

¶ 7 The majority's legal analysis appears to be driven not by principles of legal interpretation but by "moral" principles. In short, the majority simply believes that it is indecent for a murderer to claim he acted under duress. Whether or not that is true, it is not the question before us. Nothing has changed since *Spunaugle* that would suggest the Legislature intended a different interpretation of the duress statutes. This Court ought not amend or repeal a clear expression of Legislative intent because it does not agree with the outcome.

**5.** The majority opinion cites *Moore v. State*, 1987 OK CR 68, 736 P.2d 161, in support of its waiver holding. *Moore* is a capital case in which the defendant, at the conclusion of the State's second-stage closing argument, affirmatively stated that he wanted to waive closing argument. The trial court then warned the defendant that it still had discretion to allow the State a second closing argument. Nevertheless, the defendant again "stated that he wished to follow his counsel's advice and waive closing argument." *Id*. at 166 Hence the *Moore* case involved a defendant who twice explicitly waived his right to present a closing argument. It provides no support for the Court's current holding regarding *implied* waiver.

**6.** 21 O.S.2001, §§155, 152(7).

**7.** 21 O.S.2001, §156.

**8.** 21 O.S.2001, § 156.

**9.** 1997 OK CR 47, 946 P.2d 246.

**10.** *Spunaugle*, 946 P.2d at 250. The Oklahoma statutes focus on the actor and individual characteristics which may excuse his actions, rather than on the moral justification for the actions themselves.