2012 OK CR 9

**Ronson Kyle BUSH, Petitioner,**

v.

**The STATE of Oklahoma, Respondent.**

**No. DC–2009–1113.**

Court of Criminal Appeals of Oklahoma.

June 19, 2012.

---

Mary S. Bruehl, Vicky Floyd, Indigent Defense System, attorneys for defendant at trial.

Bret T. Burns, District Attorney, Leah Edwards, Assistant District Attorney, Chickasha, OK, attorneys for the state at trial.

Traci J. Quick, Michael Morehead, Indigent Defense System, Norman, OK, attorneys for petitioner on appeal.

E. Scott Pruitt, Attorney General of Oklahoma, Jennifer Dickson, Assistant Attorney General, Oklahoma City, OK, attorneys for respondent on appeal.

### *OPINION*

LEWIS, Vice Presiding Judge.

¶ 1 Ronson Kyle Bush, was charged with first degree murder in violation of 21 O.S.Supp.2004, § 701.7(A), and possession of a firearm after former conviction of a felony in violation of 21 O.S.2001, § 1283, in Grady County District Court case number CF–2008–371. The State filed a Bill of Particulars regarding the punishment for first degree murder, which alleged three aggravating circumstances: (1) the murder was especially heinous, atrocious or cruel; (2) there exists a probability that the defendant would commit criminal acts of violence such that he would constitute a continuing threat to society; and (3) the murder was committed by the defendant while he was serving a sentence of imprisonment on a conviction for a felony. 21 O.S.2001, § 701.12(4), (6), and (7).

¶ 2 Bush proceeded to trial on October 19, 2009, before the Honorable Richard G. Van Dyck, District Judge. After the State had presented its second witness, on October 22, Bush expressed his desire to enter a blind plea. The trial court conducted a plea hearing and allowed Bush to enter an *Alford*[1] plea to first degree murder and a guilty plea to possession of a firearm after former conviction of a felony. The next day a non-jury sentencing proceeding commenced pursuant to 21 O.S.2001 701.10(B). Sometime during the first day of sentencing, Bush told the trial court that he wanted to withdraw his pleas, but the trial court denied his motion and advised him to wait until after being sentenced to move to withdraw the plea. At

1. *North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).

the conclusion of sentencing trial Judge Van Dyck found the existence of all three aggravating circumstances and assessed punishment at death on the first degree murder; the trial court assessed a life sentence on the firearm charge.

¶ 3 After being sentenced, and within the requisite ten day period, Bush filed a motion to withdraw his plea on November 9, 2009, the specifics of which are discussed below in our evaluation of propositions one and two. The trial court held a hearing on the motion and, at the conclusion of the hearing, denied the motion. Bush is now before this Court with his appeal from the trial court's decision and with his appeal from the Judgment and Sentence.[2]

## I. FACTS

¶ 4 On the evening of December 22, 2008, while at Billy Harrington's home, Ronson Bush shot Harrington six times with Harrington's .357 caliber revolver. Harrington made it to the front yard of the home, where he collapsed. Bush then tied Harrington to the back of his pickup and dragged him into a field near the house.

¶ 5 By all accounts, Harrington and Bush had been best friends for a number of years. Harrington did what he could to aid Bush who dealt with addictions, paranoia, and other related mental illnesses. Harrington's final attempts to assist Bush came just days before the shooting. On December 18, Harrington attempted to take Bush to Griffin Memorial Hospital in Norman, Oklahoma but Bush was exceedingly drunk, and the two men fought during the trip. Harrington left Bush in a parking lot in Norman, and drove on to Tulsa for work. Bush hitched a ride back to Harrington's trailer. When Harrington arrived home that evening, accompanied by Jimmy Barrington, they found Bush passed out on the couch with Harrington's firearms purposefully placed around the house.

¶ 6 After calling the sheriff's office to send someone to the house, Harrington again

agreed to take Bush back to Griffin Memorial Hospital, where Bush voluntarily admitted himself for treatment. Bush, however, on December 22, checked himself out of the hospital, called Harrington for a ride, and returned to Harrington's home. Bush drank vodka from a pint bottle purchased in Blanchard on the way home. Once home, both men shot guns off the porch and played with Harrington's dog. Harrington also gave Bush a haircut.

¶ 7 Sometime around 7:15 p.m., Harrington was talking on the phone with his girlfriend who could hear Bush in the background. Bush took a photograph of Harrington and nothing seemed amiss; minutes later, however, Bush shot and killed Harrington.

¶ 8 Bush explained that things started downhill when he mentioned getting Christmas presents for Stephanie Morgan, an ex-girlfriend, and her son. Bush said that Harrington told him that he should forget about Morgan as she was sleeping with other people. According to Bush, Harrington went on to say that even he had "fucked" her. Bush said he then snapped, picked up the .357 revolver, and started shooting Harrington. Bush kept shooting as Harrington got up, went to the kitchen, collapsed, then got up and walked outside.

¶ 9 At around 7:44 p.m. Harrington's mother, Kathy Harrington, tried to call Harrington's cell phone, but Bush answered. Bush kept putting Mrs. Harrington off, probably because Harrington was already dead. Mrs. Harrington called friends who went to the home and discovered Harrington's body in the field.

¶ 10 Bush, in the mean time, left the trailer in Harrington's truck, bought some beer, and drove to Ms. Morgan's home. Bush kicked in the back door and entered Morgan's unoccupied home. He waited on her to arrive and drank some alcohol from a commemorative bottle she had stored in her bedroom.

¶ 11 Morgan arrived home and was unable to turn on the bedroom lights. She heard

2. Appellant's notice of intent to appeal was timely filed on December 4, 2009, and his Petition for Writ of Certiorari was filed with this Court on January 27, 2010. Appellant filed his brief on

March 31, 2011. The State filed its response brief on July 28, 2011. Appellant's reply brief was filed August 17, 2011. Oral argument was held February 28, 2012.

Bush say that he heard her come in. Bush was in the bedroom lying on the bed. Morgan tried to get away by walking out and getting in her car. Bush, however, got in the passenger side. Morgan was finally able to let someone know that Bush was there, get him out of the car, and drive away.

¶ 12 Authorities arrived at Morgan's home, and Bush was arrested for violating a protective order Morgan had against him. Bush, at the time of the arrest, confessed to shooting Harrington.

## II.   ISSUES RELATING TO MOTION TO WITHDRAW

¶ 13 In propositions one and two, Bush argues that he entered his *Alford* and guilty pleas due to ignorance, inadvertence, misunderstanding and misinformation and he was deprived of effective assistance of counsel in pursuing his motion to withdraw those pleas. The State claims that Bush has waived any attacks on the plea proceedings, because he told the trial court that he did not want to withdraw his pleas.

¶ 14 In response, Bush counters that the record is, at least, unclear regarding his desire to seek to withdraw his pleas, and moreover, if he intended to waive his right to appeal the guilty plea, the proper procedure to determine his competency to do so was not followed.

¶ 15 Bush bases his claim of ignorance, inadvertence, misunderstanding and misinformation on discussions between Bush and the trial court. Bush stated that he wanted to waive jury trial and enter the plea so that his and the victim's family would not have to go through the pain of testifying. Then, showing his misunderstanding of the law, Bush was allegedly surprised to find that the family members would be required to testify during the sentencing stage, so he told the Court he wanted to withdraw his pleas, because the thing he wanted to avoid was happening anyway.

¶ 16 Bush explained that he was not aware that the family members would be testifying during the second stage and that he wanted to withdraw his plea. He explained that he had evidence that was relevant for first stage to show that he did not commit the murder with premeditation.

¶ 17 The trial court, in the exercise of its discretion, denied Bush's oral motion to withdraw and informed him that he could file a motion to withdraw his pleas after sentencing if he chose to do so. While a trial court may allow a guilty plea to be withdrawn anytime before judgment, 22 O.S.2001, § 517, there is no right to appeal a decision denying the motion in an interlocutory manner. *See Nguyen v. State*, 1989 OK CR 6, ¶¶ 6–7, 772 P.2d 401, 403, *overruled on other grounds in Gonseth v. State*, 1994 OK CR 9, 871 P.2d 51 (excepting guilty pleas that result in a deferment of judgment or "deferred sentence"). A defendant may always seek to withdraw his plea within ten days after the entry of judgment and sentence by following Rule 4.2, *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch.18, App. (2012).

¶ 18 Bush followed the procedure of Rule 4.2 and filed a motion to withdraw his plea soon after he was sentenced. He reurged his claim that his plea was entered through inadvertence, ignorance or mistake. He further claimed the pleas were not knowingly and voluntarily entered; the pleas were entered due to coercion; the sentences were excessive; he was not mentally competent to enter the pleas, nor was he competent at the time of the crime; and he was deprived of effective assistance of counsel during the proceedings.

¶ 19 The trial court set a hearing date for the motion and conflict counsel was appointed to represent Bush at the hearing. Counsel for Bush told the trial court that Bush did not wish him to call any witnesses, so he would stand on the motion. Bush, however, did testify during the hearing. Bush was questioned about every claim in the motion to withdraw plea which was filed by trial counsel. Bush disavowed all of the claims in the motion and specifically told the trial court that he did not want to withdraw his pleas to the crimes. The trial court, consequently, denied Bush's motion to withdraw the pleas. Bush now seeks to appeal the trial court's ruling and he claims that if a trial were to take place, he could present evidence that he was acting under a heat of

passion and that he had a defense of intoxication.

¶ 20 At this stage of the proceeding, it is clear that Bush did not want to withdraw his pleas during the hearing on his motion to withdraw. He waived all of the claims set forth in the motion. The trial court had no choice but to deny the motion, because Bush stated that he knew what he was doing when he entered his *Alford* and guilty pleas and there was no evidence to dispute the finding that Bush was competent to enter his pleas.

¶ 21 Bush's actions at the withdrawal hearing require this Court to find that he has waived his right to appeal the denial of his motion to withdraw. On appeal, however, Bush tries to paint this Court into a corner by arguing that, if he waived his appeal, we must necessarily find that the trial court failed to order an independent competency evaluation to determine whether Bush was competent to waive his appeal.

¶ 22 An independent competency evaluation is not necessary in this case, because Bush has not waived his right to appeal his entire case. Unlike the defendants in *Fluke v. State*, 2000 OK CR 19, 14 P.3d 565 and *Grasso v. State*, 1993 OK CR 33, 857 P.2d 802, who asked for the death penalty by stipulating to the aggravating circumstances and waiving the presentation of mitigating evidence, and were required to undergo competency evaluations, Bush did not ask for the death penalty, nor has he affirmatively waived his right to appeal sentencing issues in this case.[3]

¶ 23 In capital cases, there are two trial stages; the first stage determines guilt/innocence issues on capital crimes alleged in the Information, and the second stage determines sentencing issues as alleged in the bill of particulars, i.e. whether the alleged aggravators are proven beyond a reasonable doubt and whether the aggravating circumstances outweigh the mitigating factors. Here, Bush pled guilty to the Information, but did not plead guilty or stipulate to the bill of particulars. Thus he has not waived all issues arising in the trial of the bill of particulars, *i.e.*, the sentencing stage as those issues properly preserved during the sentencing trial are ripe for review.

¶ 24 This case closely resembles the more recent case of *Thacker v. State*, 2004 OK CR 32, 100 P.3d 1052, where the defendant pled guilty to the crimes, and faced a non-jury sentencing proceeding. In *Thacker*, like this case, the State presented evidence of aggravating circumstances and the defendant presented evidence in mitigation. The defendant, in *Thacker*, did not move to withdraw his guilty plea; however, this Court was required to complete a mandatory sentence review. In *Thacker*, no independent competency determination was required because the defendant was not volunteering for the death penalty. The defendant, however, had undergone examination by mental health experts for purposes of mitigation. *Id.* ¶ 36, 100 P.3d at 1060.

¶ 25 In this case, we presume that Bush is competent. 22 O.S.2001, § 1175.4. No one in this case raised any doubt about Bush's competency by filing a proper application for determination of competency pursuant to 22 O.S.2001, § 1175.2, until after he had pled guilty. Even that application lacked specific facts sufficient to raise a doubt as to Bush's competency other than to state that previous (trial) counsel believed Bush to be incompetent. At the withdrawal hearing, counsel appointed to pursue the motion to withdraw stated that he believed Bush to be competent, and had no reason to doubt his competence.

¶ 26 At the conclusion of the withdrawal hearing, the trial court made a finding that Bush was competent at the plea hearing and that he is "fully competent today." Further,

---

3. Also *see Wallace v. State*, 1995 OK CR 19, 893 P.2d 504 (where defendant pled guilty to the crimes, waived the presentation of mitigation evidence, asked for the death penalty, and waived his rights to appeal); *Magnan v. State*, 2009 OK CR 16, 207 P.3d 397 (pled guilty to three counts of first degree murder, and at sentencing, stipulated to the aggravating circumstances, waived the presentation of mitigation, waived any direct appeal, and demanded to be sentenced to death for the murders); *Duty v. State*, 2004 OK CR 20, 89 P.3d 1158, (plead guilty to information, stipulated to the aggravating circumstances, waived mitigation, asked for the death penalty and waived his direct appeal).

no evidence of incompetence was presented at any time. Obviously, the trial court, who must make the initial finding, did not believe that any doubt existed about Bush's competency. *See* 22 O.S.2001, § 1175.3.

¶ 27 This competency discussion goes to illustrate that Bush was competent to make decisions in this case, and he was not shy about doing so. It is obvious that, at the time of the hearing on the motion to withdraw (which is the last time Bush was heard in open court), Bush was ready and willing to accept his conviction and the sentence of death.

¶ 28 However, even though Bush was willing to accept his judgment and sentence, he now claims in proposition seven, that there was an insufficient factual basis to support the *Alford* plea to first degree murder. In as much as this was not argued at the motion to withdraw hearing and the fact that Bush did not want to withdraw his plea, this issue is waived. Rule 4.2(B), *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch.18, App. (2012).

¶ 29 Even so, the factual basis was more than sufficient. The factual basis of the plea must be sufficient so that the trial court can test whether the plea is being entered intelligently. *North Carolina v. Alford*, 400 U.S. 25, 37–38, 91 S.Ct. 160, 167–68, 27 L.Ed.2d 162, 171–72 (1970). The factual basis is also a means by which a court can know that it is not convicting a person innocent of the charges. *See Lozoya v. State*, 1996 OK CR 55, ¶ 41, 932 P.2d 22, 34.

¶ 30 In this case, the trial court relied on the preliminary hearing evidence, Bush's statements to law enforcement officers, and the extent of the trial evidence presented prior to the plea. It is noted that the State made an opening statement to the jury indicating what the evidence would show. This is really all that is required in an *Alford* plea. *See Wester v. State*, 1988 OK CR 126, ¶ 4, 764 P.2d 884, 887 (opinion on rehearing).

## III. SENTENCING ISSUES

¶ 31 Bush claims in proposition three that there was insufficient evidence to support the trial court's finding of two of the aggravating circumstances: that the murder was especially heinous, atrocious, or cruel, and that there existed a probability that Bush would commit criminal acts of violence such that he would constitute a continuing threat to society. *See* 21 O.S.2001, § 701.12. When the sufficiency of the evidence supporting an aggravator is challenged on appeal, we review the evidence in the light most favorable to the State to determine whether any rational trier of fact could have found the facts necessary to support the aggravating circumstance beyond a reasonable doubt. *DeRosa v. State*, 2004 OK CR 19, ¶ 85, 89 P.3d 1124, 1153. This issue is always reviewable due to our mandated sentence review set forth at 21 O.S.2001, § 701.13.

¶ 32 This Court upholds a finding of the heinous, atrocious, or cruel aggravating circumstance when there is proof of serious physical abuse where the victim experiences conscious physical suffering before death. *Coddington v. State*, 2011 OK CR 17, ¶ 59, 254 P.3d 684, 708–09. The aggravating circumstance is also supported when the defendant inflicts torture, including great physical anguish or extreme mental cruelty. *Id.* In the present case, the trial court found that the bullet wounds created "great pain" and concluded that Harrington endured conscious physical suffering resulting in great physical anguish. The trial court also found that Bush was indifferent to the suffering of Harrington.

¶ 33 The evidence in this case indicated that Harrington was initially shot while sitting on a recliner, but he did not die immediately. Harrington suffered six gunshot wounds. Three of the wounds were to the right arm, including a close contact wound. One shot was to the left arm. The other two shots entered from the rear of Harrington's body, one just grazed the neck and the other was the fatal wound to the back, which entered Harrington's back lacerating the liver, diaphragm and right lung. A blood trail indicates that Harrington walked to the kitchen sink, and then went outside to the front yard. Harrington might have been shot as he was moving between these locations. The order of gunshot wounds was not

determined by the medical examiner, but, according to the medical examiner, the victim could have lived for several minutes after the fatal shot.

¶ 34 The trial court did indicate that Bush dragged Harrington behind his pickup "in a heinous and atrocious manner with extreme cruelty." However, Appellant argues, there was no evidence that Harrington was conscious as he was being dragged. Even if we assume that Harrington was unconscious during the dragging, the amount of suffering which occurred before the dragging is sufficient to support the trial court's finding of conscious physical suffering.

¶ 35 Appellant also argues that the act of the shooting itself cannot support this aggravating circumstance. Appellant cites *Cudjo v. State*, 1996 OK CR 43, ¶ 29, 925 P.2d 895, 901–02,[4] where the victim was shot in the back of the head, but did not immediately succumb to the injury. Instead, the victim told police he was okay, but later experienced nausea, vomiting, and a headache. After arriving at the hospital, the victim became unresponsive. This Court held that the evidence was insufficient to support the heinous atrocious or cruel aggravating circumstance. In *Cudjo*, this Court reasoned that all murders contain some kind of physical abuse, but only murders which involve serious physical abuse are especially heinous, atrocious, or cruel.

¶ 36 Appellant also cites *Cheney v. State*, 1995 OK CR 72, ¶ 17, 909 P.2d 74, 80, and *Hawkins v. State*, 1994 OK CR 83, ¶ 43, 891 P.2d 586, 596–97, to show that the shooting itself could not support the heinous, atrocious or cruel aggravating circumstance. In *Cheney* the victim and her defendant husband were having an argument. The victim sprayed her husband with mace, and then ran. The defendant chased her and shot her several times. The shooting lasted only seconds and some of the wounds would have rendered her immediately unconscious. This Court struck this sole aggravating circumstance.

¶ 37 In *Hawkins*, this Court found that the death was preceded by the infliction of extreme mental cruelty, even if it lacked serious physical abuse; therefore, the aggravating circumstance was affirmed. In that case, however, this Court noted that serious physical abuse could be gratuitous violence beyond the act of killing. *Id.* In *Browning v. State*, 2006 OK CR 8, ¶ 50, 134 P.3d 816, 843, however, this Court noted that no definition of "serious physical abuse" has been adopted, "including the one in *Hawkins* . . . ."

¶ 38 Appellant also cites *Washington v. State*, 1999 OK CR 22, 989 P.2d 960. However, in *Washington*, this Court found that there was evidence of the aggravating circumstance, although the Court stated that the evidence was weak because the victim suffered less than a minute. *Id.* ¶¶ 48–49, 989 P.2d at 975. The victim in *Washington* was shot eight times, with no clear evidence of the order of the shots. Two wounds were shots to the head which would have caused immediate unconsciousness. The State's theory, supported by the evidence, was that the victim was shot in the leg and then crawled under a table where she was fatally shot in the head.

¶ 39 In *Simpson v. State*, 2010 OK CR 6, ¶ 43, 230 P.3d 888, 902–03, cited by the State, this Court found the evidence sufficient for this aggravating circumstance where one victim received four gunshot wounds, only one of which was fatal. In *Simpson* the victim was able to speak to others, knew he had been shot, and was fearful the defendants would return. The aggravating circumstance was stricken with regard to the other victim in *Simpson*, because the evidence was that the victim died within seconds of being shot.

¶ 40 The evidence in this case is analogous to the evidence is *Simpson*. Here the evidence established that Harrington survived his gunshot wounds for a period of time. The medical examiner testified that the wounds suffered would be painful. The injuries included fractured bones in both arms due to the gunshot wounds; a grazing wound to the neck; and the injuries to the

4. We note that Appellant fails to offer public domain citations including citation to the specific paragraph therein.

liver and lungs due to gunshot wounds. The wound to the lung and liver would have caused difficult and uncomfortable breathing. The trial court was very careful in its own questioning of the Medical Examiner to clarify that Harrington would not have become immediately unconscious due to any particular gunshot wound, nor due to the effect of the totality of the gunshot wounds. We find there was sufficient evidence from which the trial court could find, beyond a reasonable doubt, that the murder was especially heinous, atrocious or cruel.

¶ 41 Having found sufficient evidence for this aggravating circumstance, we must address Bush's claim, raised in proposition eight, that the heinous, atrocious, or cruel aggravating circumstance is unconstitutionally vague and overbroad as it is currently applied. This Court has consistently held that this aggravating circumstance sufficiently narrows the class of murders that are eligible for the death penalty so as to pass constitutional muster. *See e.g. Magnan,* 2009 OK CR 16, ¶ 37, 207 P.3d at 408. We will not revisit this issue here.

¶ 42 Bush's attack on the sufficiency of evidence for the continuing threat aggravating circumstance is also unavailing. The continuing threat aggravating circumstance requires a finding that a defendant's behavior has demonstrated a threat to society and a finding that there is a probability that this threat will continue to exist in the future. *Grissom v. State,* 2011 OK CR 3, ¶ 61, 253 P.3d 969, 990. This aggravating circumstance may be proven by evidence of prior convictions, unadjudicated offenses, the nature of the crime itself, or any other relevant evidence. *Id.; Magnan,* 2009 OK CR 16, ¶ 31, 207 P.3d at 407.

¶ 43 The State argues, for the most part, that the callous nature of the offense is enough to support this aggravating circumstance. The State's argument finds support in this Court's previous cases where the callous nature of the offense as well as other factors were used to support the continuing threat aggravating circumstance. *See Grissom,* 2011 OK CR 3, ¶ 61, 253 P.3d at 990; *also see Goode v. State,* 2010 OK CR 10, ¶ 99, 236 P.3d 671, 689 (callous nature of the offense as well as prior violent felonies)

¶ 44 The State has not identified any particular violent act that Bush committed prior to this crime. The only indication of prior violence is the fact that Stephanie Morgan stated that Bush becomes violent when he drinks and uses drugs, and she received a protective order against him. She said he had not committed assaults on her, except for pushing her once. She also stated that he threatened to kill any other men she dated.

¶ 45 Other evidence supporting the continuing threat aggravating circumstance was that, after the offense, Bush went to Morgan's home, kicked in the back door, went inside, disabled the bedroom lights, reclined on the bed, and waited for her in the dark. Morgan was afraid and Bush followed her to her car and she could not get him out of the car.

¶ 46 The State also presented evidence that, after being arrested for this murder, Bush was attempting to escape from the Grady County jail. Bush and another inmate pried away a screen on a window and used a metal rod to chip away at the mortar around the window. Bush also damaged a toilet and shower in an apparent attempt to get through a wall in his single cell. At one point, jailers also found, after searching Bush's cell, a homemade shank made from paper.

¶ 47 Evidence showed that the downward spiral of Bush's life seems to coincide with his meeting Morgan in June, 2008. Bush's path to this violent act, however, started much earlier than the summer before this murder, when he met Morgan. Bush had convictions for second degree burglary in 1997 and credit card theft in 1999. These offenses involved thefts from family members. Bush finally found himself sentenced to prison for uttering forged instruments and possession of stolen property, which also involved thefts from family members. He was released from prison in September 2007. These non-violent offenses allegedly were committed in order to fund Bush's drug and alcohol addictions.

¶ 48 He started dating Stephanie Morgan in June of 2008. During the relationship he was drinking and using drugs. At first he denied having an addiction, but finally admitted to using "ice." He became violent, so violent that Ms. Morgan sought and received a victim protective order in December 2008. Bush was continually accusing Morgan of being unfaithful and threatened to kill anyone who made advances toward her.

¶ 49 The main question here that the trial court had to ask itself was whether Bush is a continuing threat to society? The evidence, including this offense, his history of drug and alcohol abuse, his history of paranoid and obsessive behavior, and finally his failed attempts to escape, point to a conclusion that Bush is a continuing threat. More specifically, there is an existence of a probability that Bush will commit criminal acts of violence that would constitute a continuing threat to society.

¶ 50 There was sufficient evidence for the trial court to make this finding. The most convincing evidence of this is the fact that Bush killed his best friend and had no care in the world about what he had just done. His alleged reasons for killing Harrington were all figments of his imagination. Bush has exhibited delusional behavior in the past by imagining that Hispanic gang members were after him. He also indicated a willingness to disregard the law by attempting to escape from the county jail.

¶ 51 The trial court could not take a chance and say that there was no probability that Bush would commit criminal acts of violence that would constitute a continuing threat to society. Instead, the trial court found that a probability did exist, based on the nature of the offense and Bush's prior behavior. The continuing threat aggravating circumstance is supported by the evidence.

¶ 52 In addition to arguments attacking the aggravating circumstances, Bush also argues that the trial court's sentencing decision was influenced by improper and inadmissible evidence. In proposition four, Bush claims that the trial court considered improper testimony from a jail-house snitch during the sentencing proceedings. The trial court sustained Bush's motion to bar the witness's

testimony because no notice was given to Bush regarding the evidence in aggravation. *See* 21 O.S.2001, § 701.10. Regardless, Bush argues, the trial court allowed the State to give an offer of proof regarding the expected testimony of informant Jackie Nash. It is this offer of proof that Bush now argues influenced the trial court, in part, in sentencing Bush to the penalty of death.

¶ 53 Bush first argues that the offer of proof was improperly given because there was no need for the State to preserve the evidence with an offer of proof, as the State would not be appealing Bush's sentence. Even if the offer of proof was improperly given, Bush must overcome the presumption that the trial court only considered competent and admissible evidence in reaching its decision. *See Long v. State*, 2003 OK CR 14, ¶ 4, 74 P.3d 105, 107.

¶ 54 In *Long,* the trial court listened to an audio tape during a suppression hearing, after which the trial court suppressed the tape. The trial court went on to conduct a non-jury trial. The defendant in *Long* could not overcome the presumption that the trial court did not consider improper evidence during the trial. *Id.*

¶ 55 Here, the evidence proffered was intended to support the continuing threat aggravating circumstance. The State indicated that Nash would testify that Bush told him that he deliberately intended to kill Harrington and had planned it for several days; he went to detox to get his head straight before carrying out his plan; he held him hostage trying to make him confess to having a sexual relationship with Morgan; he finally shot Harrington in the arm while holding the gun to Harrington's shoulder; Harrington reached forward and Bush shot him again.

¶ 56 Bush told him that Harrington went outside and Bush believed that Harrington was still alive when he dragged him behind the pickup; Bush said he wasn't drunk, but drank afterward and intended to use intoxication as a defense; according to Nash, Bush bragged about his escape attempts; he planned a third escape by digging around the toilet and shower, damaging them; he said he intended to escape on his way to court

and kill a guard or whomever necessary in order to get away. Nash indicated that Bush showed no remorse and laughed about killing Harrington.

¶ 57 The offer of proof contained evidence otherwise unknown through other admissible channels. The new evidence included Bush's account of the events of the killing and the planning of the killing-in contrast to his claim that the killing was a spur of the moment killing brought on by Harrington's boasting of sexual acts with Morgan. The evidence of the damage to the toilet and shower area was confirmed as an escape attempt by this offer, and further, Bush's statement that he intended to flee from court and kill if necessary to escape were not available from other testimony.

¶ 58 Bush claims that this evidence was so prejudicial that it was impossible for the trial court to ignore. Although the offer contained powerful evidence, there is little indication that the trial court utilized this evidence in making a sentencing decision. As Bush points out, the trial court did cite to the instances of attempted escape as factoring into the basis for a finding that the probability existed that Bush would be a continuing threat to society. Other admissible evidence, however, provided sufficient evidence that Bush was attempting to escape from the Grady county jail.

¶ 59 To overcome waiver claims regarding this offer of proof, Bush claims counsel was ineffective in its ability to preserve Bush's rights to a proceeding free from outside influences and prejudices.[5] The ineffective assistance claim must also fail, because there is no evidence that the trial court utilized this information in determining the sentence.

¶ 60 As a side note, it is possible that this testimony might have been admissible as rebuttal evidence, and no discovery notice would have been required-depending on the reliability of the jailhouse informant testimony.

¶ 61 Next Bush claims, in proposition five, that the trial court's decision was influenced by improper victim impact testimony. He argues that victim impact testimony contained improper and highly prejudicial opinions about the requested sentence and, in general, victim impact evidence violates the United States and Oklahoma constitutions. "The decision maker in this case was a judge, not a jury, and unless proven otherwise, we will presume the decisions made with respect to sentencing were in compliance with the law and without passion or prejudice." *Marshall v. State*, 1998 OK CR 30, ¶ 32, 963 P.2d 1, 11. Furthermore, Bush failed to preserve any victim impact issues by objecting to the evidence when presented.

¶ 62 Initially, Bush asks this Court to reconsider its previous holding regarding the admissibility of victim's characterizations of the crime and recommendations of an appropriate sentence. Appellant points out that the holding of *Booth v. Maryland*, 482 U.S. 496, 508–09, 107 S.Ct. 2529, 2535–36, 96 L.Ed.2d 440 (1987), stating in part that a victim's opinion about an appropriate sentence violates the Eighth Amendment, was not overruled in *Payne v. Tennessee*, 501 U.S. 808, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991), because the victim impact evidence in Payne did not contain the sort of evidence of which Bush now complains. The Tenth Circuit, according to Appellant, has recognized this holding is still in force. *See Hain v. Gibson*, 287 F.3d 1224, 1238 (10th Cir.2002).

¶ 63 This Court has addressed and rejected this same challenge. *See Jackson v. State*, 2007 OK CR 24, ¶ 25, 163 P.3d 596, 603; *Murphy v. State*, 2002 OK CR 24, ¶¶ 40–45, 47 P.3d 876, 884–85. Defense counsel failed to raise this specific issue in the trial court; therefore, this court will decline to revisit an issue which was waived in the trial court.

¶ 64 This Court has stated that both "victim impact statements" and "victim impact evidence" are admissible in a capital

5. Bush filed a motion pursuant to Rule 3.11, Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch.18, App. (2012), which includes this allegation and other allegations of ineffective assistance, which will be discussed further on under the substantive claim of ineffective assistance.

sentencing procedure. This includes a rendition of the "circumstances surrounding the crime, the manner in which the crime was perpetrated, and the victim's opinion of a recommended sentence." *See* 21 O.S.Supp. 2010, § 142A-1, *et seq.* [previously 22 O.S. 2001, § 984]; *Dodd v. State,* 2004 OK CR 31, ¶ 95, 100 P.3d 1017, 1044. Section 142A-1 reads in part:

> "Victim impact statements" means information about the financial, emotional, psychological, and physical effects of a violent crime on each victim and members of their immediate family, or person designated by the victim or by family members of the victim and includes information about the victim, circumstances surrounding the crime, the manner in which the crime was perpetrated, and the victim's opinion of a recommended sentence;

¶ 65 Even though admissible, the evidence may be so prejudicial that it creates an unfair trial, thus implicating the Due Process Clause of the Fourteenth Amendment. *Lott v. State,* 2004 OK CR 27, ¶ 109, 98 P.3d 318, 346, *citing Payne,* 501 U.S. at 825, 111 S.Ct. at 2608.

¶ 66 In this case, the victim's family members gave impassioned pleas to the trial court, and they all strenuously demanded that Bush receive the death penalty. The bottom line is that this Court should only consider whether the victim impact testimony caused the sentence of death to be issued under the influence of passion, prejudice or any other arbitrary factor. 21 O.S.2001, § 701.13. In doing so, this Court must decide whether Bush has overcome the presumption that the trial court only considered competent and admissible evidence in reaching its decision. *See Long,* 2003 OK CR 14, ¶ 4, 74 P.3d at 107.

¶ 67 The State admits that the victims did stray beyond a simple opinion about a recommended sentence and elaborated on their reasons for asking for a sentence of death; however, the State points out that a trial court is presumed to know and follow the law. Here, nothing supports a conclusion that the trial court relied on the victim impact testimony in reaching a sentencing decision.

¶ 68 Lastly, Bush asks this Court to reconsider its previous holdings regarding whether victim impact testimony acts as a non-statutory aggravating circumstance. We decline to revisit this issue and continue to hold that victim impact testimony is constitutional and does not act as a "superaggravator." *Harmon v. State,* 2011 OK CR 6, ¶ 93, 248 P.3d 918, 946.

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

¶ 69 Bush claims, in propositions two and six, that counsel's conduct fell below reasonable objective standards by failing to properly pursue the motion to withdraw plea (proposition two), and by failing to properly marshal the sentencing evidence, failing to object to out of court statements made by the deceased, failing to object to victim impact evidence, and failing to adequately investigate and present mitigation evidence (proposition six).

¶ 70 In order to show that counsel was ineffective, Appellant must show both deficient performance and prejudice. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). In *Strickland,* the Court went on to say that there is a strong presumption that counsel's conduct falls within the wide range of reasonable professional conduct, i.e., an appellant must overcome the presumption that, under the circumstances, counsel's conduct constituted sound trial strategy. *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065.

¶ 71 To establish prejudice, Appellant must show that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine the confidence in the outcome." *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068.

¶ 72 With regard to proposition two, Bush now claims that counsel was ineffective for failing to fully pursue the motion to withdraw pleas. Appellant admits that some decisions are for the accused, but other strategic and tactical decisions are for defense counsel. Among the decisions for the accused is the

decision on whether to enter a plea and whether to appeal.

■ ¶ 73 Among the arguments presented in this proposition are that counsel had an obligation to present evidence at the motion to withdraw hearing, and counsel should not submit to a client's wishes to volunteer for the death penalty.

■ ¶ 74 These arguments go against Appellant's statement that some decisions are for the accused. The decisions to waive mitigation evidence, to stipulate to the aggravating circumstances, or to waive any and all appeals are left to the defendant. Although, Bush neither waived mitigation, nor stipulated to the aggravating circumstances in an attempt to get the death penalty, it is obvious that he intended to stand on his pleas at the motion to withdraw.

¶ 75 From the hearing transcript, it is clear that Bush did not want to withdraw his plea, but a motion to withdraw plea had already been filed by trial counsel. Because the motion had already been filed, Bush agreed to "stand on the motion and have mandatory review." In reading the transcript in context, it is obvious that Bush was intending on waiving or dismissing his motion to withdraw. Bush specifically stated that he did not want to withdraw his plea.

¶ 76 That was a decision which is left to a client after consultation with counsel. Obviously, there was consultation, because Bush was reminded repeatedly, by counsel, that his choice of action was against attorney advice. Counsel did all he was required to do under the circumstances, because Bush no longer wanted to withdraw his plea.

¶ 77 Bush next claims, in proposition six, that counsel was ineffective during the sentencing trial. Bush argues that counsel failed to properly marshal the sentencing evidence, failed to object to out of court statements made by the deceased, failed to object to victim impact evidence, and failed to adequately investigate and present mitigation evidence.

■ ¶ 78 The first argument regarding ineffective assistance regards evidence from Dr. Gail Poyner. She was unable to rule out

substance abuse when she diagnosed Bush with bi-polar disorder and the State's expert Dr. Hall was highly critical of this conclusion.

¶ 79 Dr. Poyner, however, interviewed Bush while he was in custody. Bush claims that Poyner could rule out substance abuse in her diagnosis based on these interviews. Appellant claims that counsel should have focused on this by presenting more testimony from Poyner in sur-rebuttal to counter Dr. Hall's criticisms.

¶ 80 The State, first argues waiver, and next argues that Appellant has exaggerated the criticism by Dr. Hall. Further, as the State points out, testimony on Bush's bipolar symptoms while not under the influence of substances was elicited at trial. Further, Dr. Hall acknowledged that a bipolar diagnosis is proper when the person is symptomatic while sober.

¶ 81 The evidence of Bush's mental condition was sufficiently presented so that the trial court could evaluate Bush's bipolar diagnosis with the aid of the expert testimony presented by defense counsel. We find, therefore, counsel was not ineffective in this respect.

■ ¶ 82 Next, Appellant attacks counsel's failure to object to hearsay statements made by the victim prior to his death. During witness Jimmy Barrington's testimony, Barrington was allowed to testify about the incident when they found Bush passed out in the victim's trailer. Trial counsel explained that she did not object because counsel intended to show that the incident was not a violent incident and that Bush was not a threat to others during this incident. Bush was merely drunk and passed out on the couch. Bush cannot show that was not valid sentencing strategy.

■ ¶ 83 Next, Appellant claims that counsel was ineffective for failing to object to victim impact evidence. In the discussion regarding victim impact evidence, it was noted that the presumption is that the trial court only relied on admissible evidence. An objection by counsel would not have made a difference in this case, because Bush cannot overcome the presumption that the trial court did not rely on objectionable material.

¶ 84 Lastly, Appellant claims that counsel was ineffective in its failure to present other mitigating evidence. Appellant seeks to supplement the record, in order to support this proposition, with extra-record evidence, which is appended to the motion for an evidentiary hearing pursuant to Rule 3.11, *Rules of the Oklahoma Court of Criminal Appeals*, Ch.18, App. (2012). This evidence includes an affidavit from Dr. Johathan Lipman, a neuropharmacologist. Bush claims that Lipman would be more qualified to testify on the effects of the prescribed drug Celexa, which Bush had taken, on his mental state at the time of the murder.

¶ 85 Bush claims that this evidence would have given the trial court a clearer picture of Bush's adverse drug reaction to Celexa. Allegedly, this expert would have opined that people with bipolar disorder can have an adverse reaction to Celexa and other Selective Serotonin Reuptake Inhibitors (SSRI). Bush argues that Lipman, as a neuropharmacologist, would have been better able, than Dr. Poyner, to refute the State's expert.

¶ 86 In this portion of the proposition Bush also claims that counsel failed to investigate the genetic history of bipolar disorder in Bush's family, which would have aided Dr. Poyner in her diagnosis and testimony. Further, Appellant claims that counsel failed to utilize Poyner who would have testified that the damage to the jail cell was indicative of bipolar disorder as Bush was likely experiencing agitation, restlessness, and impulsivity.

¶ 87 Bush's Rule 3.11 motion contains affidavits intended to support the allegations of ineffective assistance of counsel. Our rules require this Court to evaluate the information to determine whether Appellant has met his burden of providing sufficient information to show this Court by clear and convincing evidence that there is a strong possibility trial counsel was ineffective for failing to utilize or identify the evidence at issue. Rule 3.11(B)(3)(b). This standard is less demanding than the *Strickland* standard. *See Simpson v. State*, 2010 OK CR 6, ¶ 53, 230 P.3d 888, 905–06 ("[I]t is less of a burden to show, even by clear and convincing evidence, merely a *strong possibility* that counsel was

ineffective than to show, by a preponderance of the evidence that counsel's performance actually was deficient and that but for the unprofessional errors, the result of the proceeding would have been different as is required by *Strickland*.")

¶ 88 We find that Appellant is not entitled to a hearing on this issue as he has not presented sufficient evidence to show that counsel was ineffective; thus the Rule 3.11 motion is denied.

¶ 89 Dr. Poyner testified about the effects of Celexa on a person who suffers from bipolar disorder and abuses alcohol and drugs. She testified about Bush's history of untreated bipolar disorder and his reactions to SSRI's. Her opinion was that the homicidal act was the result of Bush's reaction to Celexa and his consumption of alcohol.

¶ 90 Poyner also testified that Bush's grandfather was diagnosed as bipolar, so it is unlikely that further information regarding Bush's grandfather would have strengthened Bush's case in mitigation. And lastly, with regard to the damage to the jail cells; there was overwhelming evidence that Bush, along with another inmate, was trying to pry open the window to the cell. The evidence of damage to the shower and toilet area, were also likely attempts to escape, and not merely a manifestation of bipolar disorder. In any event, the trial court was well aware of the nature of Bush's mental disorder when he concluded that a sentence of death was appropriate. Bush has not shown that the failure to introduce this evidence supports a claim of ineffective assistance.

## V. CUMULATIVE ERROR AND MANDATORY SENTENCE REVIEW

¶ 91 In proposition ten, Bush claims that the accumulation of error deprived him of due process of law and a reliable sentencing hearing. Even when we view these alleged errors in a cumulative fashion, we find that no relief is required, thus Bush's cumulative error claim must fail. *Woods v. State*, 1984 OK CR 24, ¶ 10, 674 P.2d 1150, 1154.

¶ 92 Bush claims in proposition nine that his sentence of death was issued under

the influence of passion and prejudice and other arbitrary factors. We can say, beyond a reasonable doubt, that the trial court's decision was not born under the influence of passion, prejudice or any other arbitrary factor, and the evidence supported the trial court's findings of the aggravating circumstances. *See* 21 O.S.2001, § 701.13.

¶ 93 The trial court found the existence of the three aggravating circumstances. The first two; the murder was especially heinous, atrocious or cruel; and there exists a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society, as discussed above, were supported by the evidence. The third aggravating circumstance, that the murder was committed by the defendant while he was serving a sentence of imprisonment on a conviction for a felony, was supported by evidence that Bush was on parole at the time of this murder. *See Harmon*, 2011 OK CR 6, ¶ 73, 248 P.3d at 942.

¶ 94 Bush was able to present mitigating evidence in support of a sentence less than death. This mitigating evidence included Bush's addiction to drugs and alcohol as being the root of his transgressions. The evidence included Bush's mental state of paranoia, delusions, unjustified jealousy, and untreated bipolar disorder combined with the effects of antidepressants or SSRI's at the time of the crime. Bush also presented evidence that he suffered head injuries which could have exacerbated his mental illnesses.

¶ 95 Bush presented evidence that he does well in prison. He was able to assist in training search dogs and received high praises from the correctional employees involved in that program. Bush's family members testified that they love him and that he is a positive person when he is not on drugs or alcohol. Testimony was also given that Bush is a loving father when he is not on drugs. As this sentencing proceeding was done before a judge and not a jury, Bush has a higher burden of showing that the potentially prejudicial evidence influenced the sentencing. *See Long*, 2003 OK CR 14, ¶ 4, 74 P.3d at 107.

¶ 96 Although some of the victim impact evidence was emotionally charged, Bush cannot show that the trial court was influenced into issuing a sentence which was unwarranted by the evidence.

## VI. DECISION

¶ 97 We find no error warranting reversal of Bush's convictions or sentences; therefore, the Judgments and Sentences of the trial court are, hereby, **AFFIRMED.** Bush's motion for an evidentiary hearing pursuant to Rule 3.11, *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch.18, App. (2012), is denied. Under Rule 3.15, *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch.18, App. (2012), the **MANDATE** is **ORDERED** issued upon delivery and filing of this decision.

A. JOHNSON, P.J., and SMITH, J.: concur in result.

LUMPKIN, J., and C. JOHNSON, J.: concur.

SMITH, J., Concurring in Result.

¶ 1 I concur in the Court's decision to affirm the convictions in this case. However, I dissent to the Court's treatment of the continuing threat aggravating circumstance. The trial court ruled that the testimony of the "jail house snitch," Jackie Nash, was inadmissible and sustained Bush's motion to bar the witness's testimony because no notice was given to Bush regarding this evidence in aggravation. Despite this ruling, the trial court allowed the State to make an offer of proof regarding the substance of Nash's testimony. This offer of proof was extremely prejudicial and contained evidence that was not known to the Court through any other witness or document. As pointed out by Bush, the State had no appeal of this ruling of the Court and the ruling did not depend on the content of the testimony, hence there was no reason for the court to allow this very extensive and prejudicial offer of proof. The trial court enjoys the presumption that only competent and admissible evidence was considered, but it is difficult to believe that this evidence could be ignored. I cannot find that there is no reasonable probability that

the evidence did not impact the trial court's decision to sentence Bush to death.